179    277
f218   518

# Adda L. Hays, now Adda L. Cochran, *v.* A. C. Hays and Harry J. Hays, Appellants.

*Husband and wife—Mortgage—Trust—Fraud.*

A man conveyed real estate to his wife through an attorney with the understanding that at her death the fee should go to his son by a former marriage, and for the purpose of carrying out this intention he induced the wife at the same time to execute a mortgage on the property to the attorney, in trust, for the benefit of the son. As an inducement for her to execute the mortgage, he represented that it was a deed of trust to secure the fee to the son at her death. At the time of this transaction the son was about fourteen years of age. Subsequently when he was about twenty-one years of age, differences arose between his father and his stepmother, and a divorce suit was begun. In the course of this suit a settlement was made by which the wife relinquished her rights in other property of her husband. Prior to the settlement the son was informed of it, and was asked to be a witness in the divorce proceedings, and consented to testify. No reference was made to the mortgage which was held in trust for him, and he had been previously informed by his stepmother that he had no longer any interest in the property, as his father had given it to another person. He expressed satisfaction that his stepmother was to have the property covered by the mortgage. The wife subsequently filed a bill for the cancelation of the mortgage, and averred that she did not know that the paper which she signed was a mortgage, but was induced to sign it by the representation of her husband that it was a deed of trust intended to keep the property in his own family after her death, and secure the transmission of the title to the remainder therein to his son. *Held,* (1) that complainant was a mere volunteer, and as a donee she was bound to take the gift on the terms imposed by the donor; and consequently no fraud had been committed upon her at the time of the execution of the mortgage; (2) that there was nothing to show that the son had said or done anything to estop him from asserting his rights under the mortgage; (3) that the settlement between complainant and her husband could not affect the son's rights under the mortgage.

Argued Nov. 6, 1895. Reargued Oct. 26, 1896. Appeal, No. 177, Oct. T., 1895, by defendants from decree of C. P. No. 3, Allegheny Co., Aug. T., 1892, No. 181, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for the cancelation of a mortgage.

The facts appear by the opinion of the Supreme Court, and the opinion of the lower court, by KENNEDY, P. J., which was as follows :

This bill is filed for the purpose of having decreed null and void a certain mortgage dated December 15, 1877, and recorded in the recorder's office of Allegheny county, May 16, 1892, in mortgage book, vol. 613, p. 445, conveying property known as 41 Chatham street, in the city of Pittsburg, Pennsylvania, to secure a debt of eight thousand dollars, alleged to be a balance of purchase money payable in two years from date, with interest, executed by the plaintiff, Adda L. Hays, and her then husband, A. C. Hays, one of the defendants, to J. H. White, and by him assigned to the defendant A. C. Hays, in trust for the other defendant, Harry J. Hays, and for the purpose of having the said plaintiff decreed to be the owner in fee simple of the said property, clear of all incumbrance.

The original plaintiff, Adda L. Hays, died February —, 1895, having made her last will and testament dated August 23, 1891, by which she devised the property in question to her two sisters, Kate Cochran and Rilla Cochran, who were on February 16, 1895, substituted as plaintiffs in the case.

A. C. Hays, by deed dated December 15, 1877, conveyed the property involved in this controversy to his attorney, J. H. White, who at the same time conveyed the same in fee simple to the plaintiff, Adda L. Hays, then wife of A. C. Hays. At the same time like conveyances were made of a farm situated in the state of Iowa, the purpose of the transaction at the time being, as alleged by A. C. Hays, to make proper provision for his wife while in condition to do so. At the same time two other papers were executed by Adda L. Hays and her husband, the purpose of which at the time was, as alleged, to secure to the wife a life estate in the properties conveyed, and at her death an estate in fee to Harry J. Hays, the other defendant, a son of A. C. Hays by a former marriage, the papers being called deeds or declarations of trust. It subsequently, however, transpired that they were mortgages, one being the mortgage in question in this case, and the other a similar mortgage on the Iowa property to secure a debt of five thousand dollars ($5,000), and it is claimed by the plaintiffs that in securing the execution of these papers A. C. Hays perpetrated a fraud

upon his wife in representing that the mortgage in question, which was for the full value of the property, was a deed of trust, and that this fraudulent misrepresentation renders the mortgage null and void. Subsequently, by deed dated August 15, 1879, the defendant, A. C. Hays, and the plaintiff, Adda L. Hays, his wife, conveyed the property in question to Henry A. Davis, who, by a deed of same date, conveyed a life estate therein to Adda L. Hays, and by deed of same date the remainder to Mary E. Helvie, and at the same time Adda L. Hayes released her dower interest and other rights in other property of A. C. Hays.

By proceedings in equity at No. 24, September term, 1881, court of common pleas, No. 1, of Allegheny county, Mrs. Adda L. Hays sought to have set aside the various releases and conveyances of her interests in her husband's property, as before stated, claiming that they were fraudulently obtained, and to have her marital rights therein declared and her title to that portion specifically conveyed to her, established. A complete settlement of this cause was effected in September, 1884, by which she relinquished her marital rights and other rights or claims in certain of her husband's properties, and received a deed of conveyance in fee of the Chatham street house, the property in question in this case. This settlement, while made with A. C. Hays, was directly encouraged, aided and promoted by Harry J. Hays, the other defendant.

From the testimony taken in the case, it cannot be doubted that a deception and fraud was practised upon the plaintiff, Adda L. Hays, by the defendant, A. C. Hays, at the execution of the mortgage in question. This is abundantly shown by the untruth he told her at the time and his subsequent declarations with regard thereto. It is equally shown by the testimony that the other defendant, Harry J. Hays, encouraged and promoted the settlement that was subsequently made, viz: September, 1884, which contemplated the cancelation of the mortgage and the vesting of Adda L. Hays, the plaintiff, a title in fee simple, clear of all incumbrances, to the property in question. As this is sufficient for the disposition of this case, it seems to be unnecessary to consider other questions raised.

The court, therefore, finds that the mortgage in question in this case in its inception and execution was fraudulent as to the

plaintiff, Adda L. Hays, and those claiming under her by her devolution of title, the present plaintiffs, Kate Cochran and Rilla Cochran, and that the defendant, Harry J. Hays, was not a bona fide purchaser thereof for value.

That by the settlement of September, 1884, the plaintiff, Adda L. Hays, became the purchaser for value of the property in question in this case, that this settlement involved the discharge and cancelation of the mortgage in question and was acquiesced in, encouraged and promoted by the defendant, Harry J. Hays.

The conclusions are, that the mortgage is null and void as against the plaintiffs, and that the defendant, Harry J. Hays, is estopped to set up any claim or title thereto, and that the plaintiffs are the owners in fee simple, clear of all incumbrances, of the property in question in this case.

It follows that plaintiffs are entitled to the relief prayed for. Let a decree be drawn accordingly.

### DECREE.

And now, April 29, 1895, this cause came on to be heard upon bill, answer and proofs, and was argued by counsel, and thereupon, on consideration thereof, it is ordered, adjudged and decreed as follows:

1. That the mortgage for $8,000 described in the second paragraph of the bill of complaint in this cause is fraudulent, null and void, and the defendant, Harry J. Hays, is required to deliver the same up to be canceled.

2. That Kate Cochran and Rilla Cochran, upon whom by the last will and testament of Adda L. Hays (now deceased), signed Adda L. Cochran, the title to the property No. 41 Chatham street, city of Pittsburg, has been devolved as devisees thereof in fee simple, are the owners thereof in fee simple, in law and equity, clear of all incumbrances.

3. That the defendants pay the costs, to be taxed by the prothonotary.

*Error assigned* was decree as above, quoting it.

*J. McF. Carpenter*, with him *John F. Cox*, for appellants.— The transaction once completed was not revocable to the pre-

judice of the cestui que trust: Freeman v. Freeman, 2 Pars. 82; Greenfield's Est., 14 Pa. 489.

A voluntary trust is just as binding as any other: Gulick v. Gulick, 39 N. J. Eq. 401; Perry on Trusts, sec. 104; 2 Spencer's Equity, 881.

*J. M. Stoner*, with him *A. M. Brown*, for appellees.—As Harry J. Hays promoted the settlement which he is now attemptirg to frustrate by setting up this mortgage, he is concluded: Buchanan v. Moore, 13 S. & R. 304; Robinson v. Justice, 2 P. & W. 22; Woods v. Wilson, 37 Pa. 384; Chapman v. Chapman, 59 Pa. 218; Miller's App., 84 Pa. 394; Putnam v. Tyler, 117 Pa. 586; Logan v. Gardner, 136 Pa. 600.

It may be doubted whether, under the facts of this case, there ever was any gift to Harry J. Hays, or at all events, whether there was a valid one: Scott v. Lauman, 104 Pa. 593. But waiving this, the falsehood and fraud practiced by A. C. Hays upon his wife affects the mortgage fatally in the hands of Harry J. Hays: Edgar v. Kline, 6 Pa. 331; Griffiths v. Sears, 112 Pa. 529; Musser v. Hyde, 2 W. & S. 319; Jones v. Building Assn., 94 Pa. 218.

OPINION BY MR. JUSTICE MITCHELL, January 4, 1897:

The complainant's bill states the original transaction as a gift of the house by her husband to her for life, and her own testimony, as well as that of her husband, agrees with the averments of the bill, that after her death the property was to go to the appellant, Harry J. Hays. But the bill further states her objection that at the time of the conveyance she was induced to sign a paper by the representation of her husband that it was a deed of trust, " intended to keep the property in his own family after her death and secure the transmission of the title to the remainder therein to his son, the defendant, Harry J. Hays," whereas it was a mortgage by her, as the holder of the title, to a trustee for the benefit of the said Harry J. Hays, whereby as she subsequently learned she was " deceived and defrauded."

To call such a transaction a deception is to use highly exaggerated language, but to consider it a fraud is a misapplication not only of words, but of substantial principles. Complainant was a mere volunteer, and as a donee she was bound to take

the gift on the terms imposed by the donor.   The best and simplest conveyancing to accomplish the undisputed purpose would have been a deed to White as trustee for her during life and remainder to Harry in fee, or a deed to White and a deed by him to her for life, with remainder to Harry.   The donor chose to have the deed from White to complainant in fee, and have her make a mortgage in trust for Harry.   Except for an equity based on the donor's intention that she should not be disturbed by the mortgagee during her life, there was no substantial difference to her in the methods.   But even if there had been, the donor had a right to change his mind, and if she had objected, the only consequence would have been the accomplishment of the same result in another way or the failure of the gift altogether.   But further than this, even if she had been a purchaser for value, she would have had no equity against the mortgage except to be undisturbed by it during her life, and no such injury was alleged or proved in the case.   There was no fraud in the giving of the mortgage, and, by her own statement, the complainant had no equity of any kind in the original transaction.

As to the subsequent settlement the complainant stands on different ground.   By that she relinquished her rights in the property of her husband, and as to him she was therefore a purchaser for value.   But although appellant was a voluntary donee of the mortgage, yet the gift was executed, and his estate in remainder could not be divested by any agreement between his father and his stepmother to which he was not party, except by estoppel.   Of this there is no sufficient evidence.   The claim rests mainly, if not entirely, on the testimony of Major Brown as to what took place between himself and the appellant at the time the latter became a witness in the litigation between his father and the latter's wife.   Appellant was sought as a witness in the divorce case, and Major Brown, out of sympathy, was rather reluctant to call him against his father, but found him possessed of knowledge of important facts, and " willing to tell the truth," and in so doing to help his stepmother.   Then, continues Major Brown, " I talked to him in my office privately and confidentially over the whole subject, and communicated to him the proposed settlement by which she was to get this house, and relinquished all other rights, and in fact I told him

everything about it. He showed willingness to testify in the divorce case. . . . He expressed unqualified satisfaction that she was to get that house, and seemed to think it was too little. . . . Of course I arranged that settlement without consulting him, with my own client." This is the whole substance of the testimony on this point, and, standing alone, it would be meagre to divest an estate. But its weight is materially lessened when considered in connection with the circumstances. The conversation, it will be observed, was in reference to the divorce case, and the question of property was altogether incidental to that. The mortgage was not mentioned expressly, and it was certainly not prominent in Major Brown's mind, if indeed he knew of it at all. In answer to the question whether this mortgage and its validity was one of the mooted questions in the equity case, he said, "It seems to have been, although it was not touched upon in testimony when I was present, it unquestionably was involved among the other transactions." There is no evidence that appellant had any reason to suppose that the settlement communicated to him affected his own rights. He was a young man, just under or just over twenty-one. His age does not appear exactly, but he testifies that in December, 1877, when the deed to complainant and the mortgage were made, he was between fourteen and fifteen years old, so that in September, 1884, when the settlement was executed— and this conversation was before that—he was certainly under twenty-two, and probably under twenty-one. Not only was he not informed of his rights, or of the possible effect of the proposed settlement on them, but he was actively misled by previous information from complainant herself, that he no longer had any interest in the property, as his father had taken it away and given it to Cora Helvie. One of the weightiest elements in estoppel, knowledge of his own rights in the subject-matter was therefore absent, and there is no other ground on which complainant could base any equity against appellant.

Decree reversed, and bill dismissed, with costs.