# Emily Bittenbender and Israel Bittenbender, Appellants, *v.* John M. Kemmerer and Abraham Bittenbender.

*Partnership—Settlement—Dissolution—Equity—Findings of court below.*

The Supreme Court will not reverse a decree dismissing a bill in equity to set aside an agreement to dissolve a partnership on the ground of undervaluation of property and the mental incapacity of plaintiff when he signed the agreement, when the court below finds from sufficient evidence that the plaintiff was of sound mind when he signed the agreement; that he had full knowledge of the affairs and property of the partnership, and that, during the negotiations leading to the settlement, and for several

months afterwards, he was on the best of terms with the defendants, and made no objection to an agreement.

Argued Feb. 22, 1898. Appeal, No. 368, Jan. T., 1897, by plaintiffs, from decree of C. P. No. 4, Lackawanna County, Jan. Term, 1897, No. 368, dismissing bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ. Affirmed.

Bill in equity to declare an agreement of dissolution of a partnership null and void.

The bill alleged that (1) Israel Bittenbender, Abraham Bittenbender and John M. Kemmerer were copartners trading as Israel Bittenbender, in wholesale and retail hardware, wagon-makers and blacksmiths' supplies; (2) the property of the firm, December, 1895, exclusive of real estate, amounted to $154,513.75; (3) the firm owned, December, 1895, real estate of value $71,000; total assets of the firm, $225,513.75; (4) Israel Bittenbender had suffered losses, was in debt in December, 1895, and was in an unfit condition of mind for business. His partners were his brother and brother-in-law with whom he had been in business for nineteen years. Relying on their friendship, he placed his affairs in the defendants' hands and asked their aid. They made estimates without his knowledge; drew up an agreement dissolving the partnership and demanded his signature which was given. By the contract he agreed to sell his one third interest in over two hundred thousand dollars ($200,000) worth of property for fifty-four thousand dollars ($54,000), payable in monthly instalments during a term of eight years without interest; (5) the defendants paid a portion of the amount agreed to be paid Israel for his interest. Israel Bittenbender had little knowledge of the books of the firm and the values of the stock and real estate. The other partners had knowledge of the books and the value of the firm property, and the amount agreed to be paid was not the value of the property; (6) the defendants refused to make an offer in writing, when requested to sell their interests in the property, for an amount pro rata with that which they agreed to give Israel; (7) on June 25, 1896, Israel transferred his interest in his property to his wife; (8) the plaintiffs offer to refund any money paid under the agreements.

The prayers were that (1) dissolution be declared void; (2) that plaintiffs repay the portion of consideration received; (3) an account; and (4) general relief.

The answer (1) admitted the first paragraph of plaintiffs' bill; (2 and 3) stated the value of the personalty at $98,000.83; real estate at $34,700, and total assets not more than $138,030.99; (4) alleged the sale by Israel Bittenbender was at his request and after full consideration; (5) denied paragraph four of the plaintiff's bill; (6 and 7) asserted that Israel Bittenbender was in every way capable and acted with full knowledge of the books, values, etc., and was treated fairly; (8) admitted payment on account; (9) admitted that the inventory was that of January, 1895, and avers that Israel Bittenbender had knowledge of the books and assets; (10) averred that a correct inventory of the stock was taken in January, 1896, and that it did not exceed that of 1895 and was of no greater value; (11) admitted that the value of the property on inventory was as alleged in bill and averred that it was fictitious and in excess of the actual value for the purpose of credit; (12) denied that Israel Bittenbender had no knowledge of the books and was not acquainted with the accounts, and that he was overreached; (13) averred Israel Bittenbender's knowledge of the values of the real estate.

The facts appear by the opinion of EDWARDS, J., which was as follows:

1. In January, 1882, Israel Bittenbender, Abraham Bittenbender and John M. Kemmerer formed a copartnership under the firm name of Israel Bittenbender, afterwards Bittenbender and Company, for the purpose of carrying on the business of wholesale and retail dealers in hardware, wagonmakers' and blacksmiths' supplies, on Franklin avenue, in the city of Scranton. In addition to their stock in trade, the partners became the owners of certain pieces of real estate, designated in the pleadings and in the evidence as the Franklin avenue property, the Mifflin avenue property, the Washington avenue property, and a one fifth interest in the Williams property.

2. In the year 1895, especially in the latter part thereof, Israel Bittenbender became financially involved. He had invested money in the Bonta Glass Company, and had become liable as

maker or indorser of notes for the concern in the sum of over $10,000. He had also lost some money in gambling. About December 1, 1895, he said to his copartner, John Kemmerer, that he wanted $7,000. After some further talk, the three partners met about December 6. It was ascertained by this time that Israel needed about $13,000 instead of $7,000. At this interview several solutions of the difficulty were suggested, such as an assignment for the benefit of creditors, a sheriff's sale of Israel's interest in the firm, or a private sale by Israel of his interest to his copartners. The latter method was agreed upon. Figures were discussed as to inventory of stock, book accounts, notes, valuation of real estate and manner of payments. These figures are found in plaintiff's exhibit, and I incorporate them in this finding of fact.

BITTENBENDER & COMPANY, 126 & 128 FRANKLIN AVENUE.

I. Bittenbender.
A. Bittenbender.
J. M. Kemmerer.

Scranton, Pa., Dec. 6, 1895.

ASSETS.

| | | | |
|---|---|---:|---:|
| Inventory of stock | . . . | $83,466 13 | |
| 10% | . . . . . | 8,346 00 | |
| | | | $75,120.13 |
| Book accounts | . . . . | 44,342 13 | |
| Notes and judgments | . . . | 8,512 26 | |
| | | 52,854 39 | |
| 20% | . . . . . | 10,570 88 | |
| | | | 42,283.51 |
| Store building, Franklin avenue | . | 18,000 00 | |
| Mifflin avenue property, paid | . . | 7,500 00 | |
| Washington avenue property | . | 8,000 00 | |
| 1-5th interest in Williams property | . | 1,000 00 | |
| | | | 151,934.54 |
| ⅓ out | . . . . | | 50,634.54 |
| Certificate of stocks, Lace Company | . | $8,000 00 | |
| Lackawanna & Montrose R. R. | . . | 500 00 | |
| Scranton Iron Fence Co. | . . . | 1,250 00 | |
| Scranton Axel Co. | . . . | 500 00 | |
| | | | $10,250 00 |

To remain as they are.

To be paid by A. B. and J. M. K.
           All the debts of the firm.

| | | |
|---|---|---|
| Pay Mother Sobers his half . . | $ 2,500 00 | |
| Pay notes glass affair . . | 13,000 00 | |
| Pay A. B. . . . . . | 6,800 00 | |
| | | $22,300 00 |
| Less amount due by J. M. K. . . | | 2,500 00 |
| | | $19,800 00 |
| His interest . . . . . | $50,634 52 | |
| Less . . . | 19,800 00 | |
| | | $30,834 52 |

To be in favor of his wife.

| | |
|---|---|
| Say pay him $4,200 per year for seven years commencing January 1, 1897, payable $350 per month, | $29,400 |
| and paying him $200 per month up to January 1, 1897, thirteen months, . . . . | 2,600 |
| | $32,000 |

A copy of this memorandum was given to Israel, and he had it in his possession two or three days before the final contract was signed. There is some contradiction in the evidence as to what happened at this meeting of the three partners, but I have no hesitation in finding, as a matter of fact, that the dissolution and terms of settlement were discussed by the partners, and fully understood by each.

3. On the morning of December 9, Israel went into the firm's place of business, and received from Kemmerer the contracts. He sat by the window, in the front part of the store, reading the papers. He was there about three hours. At noon he brought them into the office in the rear part of the store, and said he was ready to sign them, and that he was satisfied. The papers were signed in the presence of two witnesses. These facts appear very clearly from the evidence.

4. Several payments were made to Israel Bittenbender on account of the contract of sale. They are as follows:

Dec. 1895, $200.00; Dec. 1895, $200.00; Dec. 11, 1895, $1,000.00; Dec. 11, 1895, $1,000.00; Dec. 13, 1895, $2,000.00; Dec. 16, 1895, $800.00; Dec. 20, 1895, $800.00; Dec. 30, 1895,

$1,000.00; Jan. 20, 1896, $543.50; Jan. 20, 1896, $200.00;
Feb. 3, 1896, $1,000.00; Feb. 3, 1896, $1,000.00; Feb. 3, 1896,
$1,000.00; Feb. 11, 1896, $1,000.00; Feb. 12, 1896, $500.00;
Feb. 12, 1896, $600.00; Feb. 24, 1896, $194.71; March 19, 1896,
$200.00; April 27, 1896, $200.00.   Note assumed $6,800.00.

The total amount paid on the contract is about $20,000.
According to the terms of the contract, Israel Bittenbender was
to convey by deeds his interest in the several pieces of real
estate owned by the firm.   Demands were made upon him sev-
eral times for these deeds, and on April 17, 1896, Israel said to
Kemmerer that he and his wife would acknowledge the deeds,
but that there was a discrepancy in the figures as to the amount
due on a certain note.   A mistake had been made.   The differ-
ence amounted to $804.   This difference was settled by a bank
note given to Israel, which note was paid when it became due.
From the time the contract was signed, December 9, 1895, to
April 17, 1896, when the difference mentioned was adjusted,
and up to April 27, when the last monthly payment was made,
Israel made no complaint to his former copartners concerning
the terms on which the partnership accounts were settled.   He
said nothing and did nothing to indicate that he was dissatisfied.
His conduct in receiving the monthly payments, and in per-
mitting his notes to be paid without objection on his part,
amounts to a ratification of the terms of the contract of sale.
I do not consider such ratification essential in this case, but I
find it as a matter of fact.

5. A large portion of the testimony is directed to the question
of Israel Bittenbender's mental condition at or about the time
the contract of sale was signed.   It is contended on the part of
the plaintiffs that, on account of his financial troubles, Israel
was not in a fit condition of mind to transact business in Decem-
ber, 1895.   This is denied, and controverted by testimony, on
the part of the defendants.   After due consideration of the evi-
dence, I have come to the conclusion that the plaintiffs' conten-
tion on this point is unfounded.   Not only was Israel in sound
mental condition, and able to transact business, but he was fully
aware of the nature of the transactions connected with the dis-
solution of the copartnership, and of the terms on which the
partnership accounts were settled.

6. Were the terms of the settlement of the partnership affairs

fair and equitable to the retiring partner? Did the other two partners conceal any facts from him or did they take advantage of him in any way? In answer to these questions, I find from the evidence that the settlement between the partners was just and honorable; that nothing was concealed by one from the other, and that no undue advantage was taken of Israel Bittenbender by his copartners in the adjustment of their partnership interests: the books of the firm were always open to Israel's inspection; his long experience in the business enabled him to form a judgment as to the value of the stock, and he had the same knowledge of the value of the real estate owned by the firm as the other partners had. During the negotiations for the sale of Israel's interest and for several months after the sale was made, the conduct and feelings of the three men towards each other were of the friendliest character.

As there is considerable testimony concerning the value of the firm's real estate, the estimates of the witnesses differing on this question, it is necessary to find the value of this real estate. From the testimony, I fix the values as follows:

| | |
|---|---|
| Franklin avenue property | $25,000 |
| Washington avenue property | 10,000 |
| Mifflin avenue property | 7,500 |
| Williams property, not disputed | 1,000 |

The following legal propositions are submitted by the plaintiffs:

1. Inadequacy of price is a suspicious circumstance, and when there is great inadequacy coupled with other evidence of fraud, it is vehement evidence of fraud.

2. A bargain which no man in his senses and not under delusion would make, and no honest man accept, is no less a fraud because there has been no circumvention, and the prey was entrapped by his own folly, without a snare being set for that purpose.

3. The mere fact that confidence has been given and accepted is sufficient to give rise to a duty which is equally binding and enforced with as much strictness when it grows out of the ties of blood and friendship, or of advice or assistance, as if it were called into being by the most solemn instrument.

4. It is a rule that inadequacy of consideration, hard and dis-

advantageous stipulation, when the position held by the defendant make it his duty to take that care of the other which the latter is unable to take of himself, is sufficient warrant for the interference of equity, although there may be no actual proof of fraud, or the exercise of undue influence.

This rule is particularly applicable between members of the same family. And the same prevails in the case of pecuniary necessity, which may be ground for relief where a party is placed in a position of distress and compelled to submit to terms which ought not to have been proposed or accepted.

This rule applies to relations, not only of guardian and ward, attorney and client, but embraces partners and copartners, principals and agents, etc.

A transaction between persons in a confidential relation is regarded with jealousy and solicitude. And if there be any trace of undue influence or unfair advantage, redress will be given the injured party.

5. Partners are prohibited from purchasing property of the estate and from making any personal profits by their dealings with it. The same rule which applies to other fiduciary relations exists between partners.

Each one is subject to the rule that he must act for the benefit of all the partners, and cannot place himself in any other position or expose himself to temptation to act contrary to the best interests of all the partners. This rule applies at and after dissolution.

6. In every fiduciary relation there is implied a condition of superiority held by one of the parties over the other. In every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity and casts upon that party the burden of proving affirmatively its compliance with equitable requisites, and thereby overcoming the presumption.

The contracts attached to the bill are hard and unconscionable in terms, and the defendants must account to the plaintiffs for the full value of the property obtained under the assignment or otherwise, or the agreement should be canceled, and decree entered against the plaintiffs to repay to the defendants the amount of money already received upon the contracts, with interest from the time of payment.

7. The plaintiff is entitled to an account of all the partnership dealings and transactions between the parties.

The sixth and seventh propositions are denied. As statements of legal principles the others are affirmed so far as they are applicable to the facts of this case.

I further find as a conclusion of law:

1. That the plaintiff's prayer for an account should be denied.

2. That the plaintiff's bill of complaint should be dismissed with costs.

*Error assigned* was decree dismissing bill.

*Samuel B. Price,* with him *Roswell H. Patterson* and *William A. Wilcox,* for appellants.—A bargain which no man in his senses and not under delusion would make, and no honest man would accept, is no less a fraud because there has been no circumvention, and the prey was entrapped by its own folly without a snare being set for that purpose. The mere fact that confidence has been given and accepted is sufficient to give rise to duty which is equally binding and enforced with as much strictness when it grows out of the ties of blood or friendship or of advice or assistance, as if it had been called into being by the most solemn instrument: Chesterfield v. Janssen, 1 Leading Cases in Equity, 773; Huguenin v. Baseley, 2 Leading Cases in Equity, 1156.

This confidential relation is not confined to guardian and ward, attorney and client, it embraces partners and copartners, principal and agent: Darlington's Est., 147 Pa. 624; Miskey's App., 107 Pa. 611.

It is the law of Pennsylvania that equity will, upon proper occasion, intervene and set aside voluntarily executed deeds and other instruments: Simon v. Simon, 163 Pa. 292; Knowlson v. Fleming, 165 Pa. 10.

Partners are prohibited from purchasing property of the joint estate, and from making any personal profits by their dealing with it. The same rule which applies to other fiduciary relations exists between partners: 2 Pomeroy's Equity Jurisprudence, sec. 963; Simons v. Vulcan Oil & Mining Co., 61 Pa. 202; Wheeler v. Sage, 1 Wallace, 518; Rowman v. Patrick, 36

Fed. Rep. 138; Colton v. Stanford, 82 Cal. 351; Featherston-haugh v. Fenwick, 17 Vesey, 298; Abrahams v. Hunt, 26 Pa. 49; 1 Lindley on Part. *303.

In a suit in equity, this Court on appeal examines the evi-dence to determine what the facts are, and, if satisfied that facts have been found without proof, or material facts established by the proofs have not been found, will reverse the decision, be-cause it follows that there has been plain mistake, for which the findings should be set aside: Worrall's App., 110 Pa. 349.

*W. G. Ward,* with him *George S. Horn,* for appellees.—The burden of showing the alleged mental and bodily weakness of Israel Bittenbender, to such an extent as to render him unfit, at the time of the transaction, to transact business, is cast upon the appellants, and must be established, not doubtfully, but in a positive manner: Grabill v. Barr, 5 Pa. 443; Egbert v. Egbert, 78 Pa. 329; Grubbs v. McDonald, 91 Pa. 241.

All the facts given in evidence by the appellants fail to make a prima facie case of Israel's unfitness to transact business at the time of the dissolution, or at any other time: McMasters v. Blair, 29 Pa. 303; Cauffman v. Long, 82 Pa. 79; Dickinson v. Dickinson, 61 Pa. 404; Jones's Appeal, 127 Pa. 108; Aiman v. Stout, 42 Pa. 123; Graham v. Pancoast, 30 Pa. 97; Nace v. Boyer, 30 Pa. 101.

Vague evidence of fraud and deceit, coupled with the fact that a party had made a bad bargain, is not ground for a judicial rescission of a contract: Davidson v. Little, 22 Pa. 251.

When both parties have equal knowledge or equal means of knowledge of the property, its quantity and value, mistaken or untrue statements made by one of the contracting parties as to the quantity, quality or value of the property, is not such fraud as will avoid the contract: Gormly v. Gormly, 130 Pa. 474; Speiglemyer v. Crawford, 6 Paige Ch. 256; Kintzing v. McElrath, 5 Pa. 470; Farnsworth v. Duffner, 142 U. S. 47; Neill v. Shamburg, 158 Pa. 263; Mahaffey v. Ferguson, 156 Pa. 156; Veasey v. Doton, 3 Allen, 308; Smith v. Richards, 13 Peters, 42.

Of all matters of belief, and evidence thereof, none is more uncertain than opinions of values of property; therefore an untrue or mistaken statement of opinion of the value thereof by one party to the other, is not ground for rescinding a contract:

Bowers v. Bennethum, 133 Pa. 308; Cummings's App., 67 Pa. 413; Speiglemyer v. Crawford, 6 Paige Ch. 256; Davidson v. Little, 22 Pa. 251.

A party seeking a rescission of a contract for deceit or fraud, must promptly repudiate the contract and return or offer to return what he has received as a consideration of the contract; it must be done promptly: Pearsoll v. Chapin, 44 Pa. 12; Negley v. Lindsay, 67 Pa. 227.

Nothing but good faith and diligence can call a court of equity into activity: Phipps v. Buckman, 30 Pa. 403; Pomeroy's Eq. Jur. sec. 398.

Israel ratified the contract by remaining silent: Wilson v. Bigger, 7 W. & S. 111; Andriessen's Appeal, 123 Pa. 316; 2 Lindley on Partnership, *925; Seylar v. Carson, 69 Pa. 88; Negley v. Lindsay, 67 Pa. 228; Jones v. Emery, 40 N. H. 348; Masson v. Bovet, 1 Denio, 69.

The evidence must be clear, precise and indubitable to set aside a contract for fraud, and must refer to what occurred in the transaction at, or about the time of the execution of, the contract.   Evidence less than this is insufficient: Campbell v. Patterson, 95 Pa. 454; Cummins v. Hurlbutt, 92 Pa. 168; Yard v. Patton, 13 Pa. 281; Pennock v. Tilford, 17 Pa. 456.

The relation of trust and confidence, where each party has the full means of informing himself, is never presumed; if it exists it must be proved: Clark v. Everhart, 63 Pa. 350.

Under our present equity practice, the trial judge performs the function of an examiner, master and chancellor; hence, his finding of facts should not be set aside by this honorable Court, if there is reasonable evidence in the case upon which he could base such findings: Brotherton Bros. v. Reynolds, 164 Pa. 139.


PER CURIAM, March 21, 1898:

As set forth in the bill praying that the agreement of dissolution be declared void, etc., the grounds on which equitable relief was invoked are that the plaintiff, Israel Bittenbender, " was suffering from reverses and remorse and, not being in a fit condition to transact business and relying on the friendship and good judgment of his brother and partners, he executed the agreement, having full confidence in their statement that

the estimates of the value of the property were correct," etc. Fraud and inadequacy of price were also averred.

The learned court's findings of fact in favor of the defendants were that, "not only was Israel in sound mental condition and able to transact business," but "he was fully aware of the nature of the transactions connected with the dissolution of the partnership, and of the terms on which the copartnership accounts were settled." The sixth finding of fact is in part as follows: "That the settlement between the partners was just and honorable, that nothing was concealed by one from the other, and that no undue advantage was taken of Israel Bittenbender by his copartners in the adjustment of their partnership interests; the books of the firm were always open to Israel's inspection; his long experience in the business enabled him to form a judgment of the value of the stock, and he had the same knowledge of the real estate owned by the firm as the other partners had. During the negotiations for the sale of Israel's interest, and for several months after the sale was made, the conduct and feelings of the three men towards each other were of the friendliest character."

There was sufficient evidence to warrant these and other findings of fact on which the decree dismissing the bill is based. While there is some testimony tending to prove a different state of facts, it is not of such a character as would justify us in holding that there is any substantial error in the learned court's findings of fact. The conclusions of law, drawn from the facts thus established, are correct; and it necessarily follows that there was no error in dismissing the bill.

The suggestion that the court should retain the bill in order to work out the equities between the parties is without merit. If the plaintiffs were here asking to have the contract construed or enforced there might be something in the suggestion. But where, as here, the plaintiffs have unsuccessfully attempted to annul the contract of dissolution, etc., the only proper disposition of the case is dismissal of the bill.

Decree affirmed and appeal dismissed at appellants' costs.