**Mario UMBELINA and Tabatha Umbelina, H/W, Appellants**

**v.**

**Jack ADAMS, Individually, Jack Adams Builders, LLC and Adams & Bream Builders, LLC, Appellees.**

**Mario Umbelina and Tabatha Umbelina, H/W, Appellants**

**v.**

**Jack Adams, Individually, Jack Adams Builders, LLC, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 20, 2011.

Filed Nov. 30, 2011.

Ronald L. Finck, Harrisburg, for appellants.

E. Ralph Godfrey, Lemoyne, for appellees.

BEFORE: STEVENS, P.J., BENDER, and PANELLA, JJ.

OPINION BY STEVENS, P.J.:

This is an appeal from the order of the Court of Common Pleas of Cumberland County denying Appellants Mario and Tabatha Umbelina's request for equitable rescission of the contract providing for the construction of their home. After careful review, we affirm the trial court's denial of the Umbelinas' request for rescission and are constrained to vacate the trial court's award of restitution to the Umbelinas.

The Umbelinas, who are husband and wife, sought to purchase real property in the Jefferson Court Development in South Middleton Township, Pennsylvania in May 2005. Mrs. Umbelina informed their real estate agent that she needed a home with relatively flat terrain as she suffered chronic knee pain that limited her mobility. Although the Umbelinas considered several lots, they focused on Lot 17, which had a substantial incline in its natural state. Despite their desire for a lot with flat terrain, the Umbelinas decided to purchase Lot 17 for its size, price, and its unobstructed view of the valley due to its elevation.

The Umbelinas met with Jack Adams of Jack Adams Builders, LLC (Appellee) who was the approved builder for Lot 17. Mrs. Umbelina did not inform Adams that the home would need any special accommodations for her knee problems. The Umbelinas selected a two-story home plan because it would be less expensive than building a one-floor ranch home. Adams subsequently submitted a construction proposal that the Umbelinas accepted after reviewing it with their attorney. The construction agreement was executed on October 15, 2005.

After closing on the property, the Umbelinas met with Adams to discuss the location of the house on the lot. Adams staked out the house's approximate location in accordance with the lot's setback restrictions and informed the Umbelinas that the trees at the back of Lot 17 could not be removed due to restrictions the township placed on the subdivision. In order to lessen the steepness of the driveway, Adams asked the Umbelinas to move the home back an additional twenty feet from the proposed location. The Umbelinas only gave Adams permission to move the house back twelve feet as they wanted space to install a swimming pool in the backyard.

Before beginning construction of the home, Adams showed Mrs. Umbelina the approximate location of the garage floor using a story pole and explained the house could not be relocated once the foundation was poured. Mrs. Umbelina approved this location. However, upon viewing the actual foundation once it was poured, Mrs. Umbelina expressed concern that the driveway would be too steep. Adams assured the Umbelinas that the lot would be graded and would meet township and county requirements.

Russell E. Yinger and Timothy Stout, the South Middleton Township residential building inspectors, were responsible for inspecting the construction before issuing the certificate of occupancy. Neither Yinger nor Stout realized that the property was subject to the township's steep slope ordinance, which required (1) a professional engineer to prepare a driveway profile and a statement addressing structural concerns created by the slope and (2) the township engineer to approve the submitted plans. Unaware that this ordinance existed, Yinger mistakenly issued a building permit for the house without requiring Adams to comply with any of the steep slope requirements. Upon completion of the home, Yinger issued the home's certificate of occupancy, which was an affirmative statement a builder can rely upon that the property meets all the applicable township codes.

Prior to closing, the Umbelinas conducted a final walkthrough of the home and prepared a "punch list" of the following items that had not been completed: unfinished painting, missing downspouts, correction of mud infiltration into the basement, exposed nails in the carpet, separation of the stairs leading to the second floor, unsecured countertops, dishwasher cabinet not meeting the floor, and unsealed wires and pipes. Despite the

numerous items on the punch list, the Umbelinas stated that they loved the house and did not raise any objections to the steep driveway. The Umbelinas closed on the property on June 30, 2006.

After Adams did not complete the items on the punch list and the Umbelinas found more problems in their home, the Umbelinas met with Yinger and Stout, who discovered the driveway violated township codes. When the Umbelinas confronted Adams about the code violations, he responded that the home was issued a certificate of occupancy, but apologized "for not building [the] house to what [the Umbelinas] needed, and [admitted] he did not have the experience to build the house [the Umbelinas] required." N.T., 6/21/10, 114. The Umbelinas prohibited Adams from returning to their home to address the uncompleted work and hired other contractors to (1) install a retaining wall to prevent mud infiltration in the basement, (2) install gutters, (3) replace wet drywall, (4) replace insulation in the house and garage, and (5) construct yard terraces. On September 26, 2006, the Umbelinas filed a consumer protection complaint against Adams Builders with the state Attorney General's office.

On June 21, 2007, the Umbelinas filed a lawsuit against Adams and Bream Builders, LLC, and Adams individually, seeking damages for breach of contract, requesting rescission of the agreement of sale, and alleging violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL). Adams and Bream Builders, LLC denied having any involvement with the construction of the Umbelinas' home. The Umbelinas did not take any further action until July 22, 2008, when they filed a second lawsuit against Jack Adams Builders. The trial court consolidated the two actions for trial.[1] After a pretrial conference, the Umbelinas stipulated that it was inconsistent to seek both damages at law and rescission of the contract. As a result, the Umbelinas elected to proceed with their action in equity and limited their claims to rescission of the contract and the UTPCPL violations. The trial court subsequently dismissed their action at law with prejudice.

From June 21, 2010 to June 23, 2010, a trial court sat as factfinder in a bench trial and visited the site of the Umbelinas' home to view the slope of the driveway. The Umbelinas presented the expert testimony of Gregory Rogalski, a registered professional engineer, who testified that the driveway violates South Middleton Township's Zoning Ordinance Section 1807, which requires driveways not to exceed a seven percent slope within the first twelve feet from the street. The overall slope of the Umbelina's driveway is eighteen percent, however, the slope in the first nine feet of the driveway is only 0.8% over the seven percent threshold. Rogalski opined that it would impractical to attempt to remediate the slope of the driveway by lowering the garage or moving the house back further onto the lot.

In addition to the driveway violation, Rogalski found several other violations

---

1. The trial court eventually entered a verdict in favor of Adams and Bream Builders, LLC and Adams individually, as they were not parties to the contract at issue. Although Adams was a member of Adams and Bream Builders LLC, the trial court found that the only connection Adams and Bream had to this case was Adams's inadvertent use of Adams and Bream letterhead for the specification sheet. All other documents clearly stated that the Umbelinas contracted with Jack Adams Builders for the construction of their home. The trial court also refused to pierce the corporate veil to find Adams individually liable. *See* Trial Court Opinion, 10/2/10 at 24–25. These findings do not affect our resolution of any of the claims in this appeal.

and problems within the Umbelina home. He shared that the home did not have anchor straps between the framing and the foundation which makes the house susceptible to lifting up during a windstorm and violates International Residential Code Section 403.1.5. Rogalski also observed significant cracks in the foundation wall, resulting in groundwater leakage into the basement. He indicated the first floor walls above the cracked foundation have moved as he noticed that the countertops, cabinets, and flooring have separated and the drywall has cracked. He also noted the home's insulation was improperly installed which would allow a fire to spread more rapidly through the home. Lastly, Rogalski testified that non-pressure treated wood was in direct contact with the foundation and opined that moisture from the concrete could decay this wood, resulting in additional structural problems.

Upon conclusion of the trial, the trial court found that the Umbelinas were not entitled to rescind the contract as Adams Builders had made no fraudulent misrepresentations concerning the slope of the finished driveway, his experience in constructing homes, or his honest belief that the home contained no code violations. For the same reasons, the trial court refused to find that Adams Builders had violated the state unfair practice statute.

However, the trial court found Adams Builders failed to construct a home of reasonable workmanship and value. Although the Umbelinas never raised a claim of breach of the implied warranty of habitability in their complaint and had abandoned their claims of breach of express and implied warranties with respect to the slope of the driveway, the trial court nonetheless found Adams Builders had breached the implied warranty of habitability as the home was not "functional and habitable in accordance with contemporary commu-

nity standards." Trial Court Opinion (T.C.O.), 12/2/10, at 30. The trial court awarded the Umbelinas $26,036.68 in restitution for improvements the Umbelinas made to remedy Adams's faulty construction. Both parties filed timely motions for post-trial relief. After reviewing the motions, the trial court reduced the Umbelinas' restitution to $24,036.68, but denied both parties' post-trial motions in all other respects. The Umbelinas appealed and Adams Builders filed a cross appeal.

The Umbelinas raise the following issues for our review on appeal:

1. Did the trial court err in refusing the purchasers' request for rescission despite its finding that the builder did not provide a house that is functional and habitable in accordance with contemporary community standards?

2. Did the trial court err in granting restitution damages for the house builder's material breaches rather than rescission where restitution damages fail to make the purchasers whole?

3. Are the trial court's factual findings regarding the purchasers' selection of the lot not supported by the evidence of record?

Umbelinas' Brief, at 4.

Adams Builders raises the following claims in its cross appeal:

1. Did the trial court err when it awarded restitution since the Umbelinas failed to establish fraud and/or material misrepresentation upon which they relied?

2. Did the trial court err when it awarded restitution since the Umbelinas' claim for rescission is barred by the Doctrines of Waiver and Laches?

3. Did the trial court err when it awarded restitution since the award constitutes legal damages?

4. Did the trial court err when it awarded the installation costs for the terraces, retaining wall, and railing since the award is not supported by the trial court's analysis and by the weight of the evidence?

5. Did the trial court err when it awarded restitution since there was no evidence that the house was uninhabitable, not a functional living unit and/or unfit for its intended purpose?

Adams Builders' Brief, at 4.

■ We begin by noting that the Umbelinas elected to pursue the equitable remedy of rescission of the agreement of sale and abandoned their legal claims against Adams Builders for breach of contract and breach of warranty. The doctrine of election of remedies prohibits a party from seeking inconsistent relief; a party alleging he has been defrauded in a contract must choose whether to seek rescission of the contract or to seek damages under the contract. *Schwartz v. Rockey*, 593 Pa. 536, 543, 932 A.2d 885, 889 (2007) (citations omitted).

> Rescission, an equitable remedy, involves a disaffirmance of the contract and a restoration of the status quo; whereas, the recovery of damages, which is a legal remedy, involves an affirmance of the contract. A party who has been defrauded can either rescind the contract or he can affirm the contract and recover damages. To allow him to do both would be to allow a double remedy for the same wrong.

*Wedgewood Diner, Inc. v. Good*, 368 Pa.Super. 480, 534 A.2d 537, 538–39 (1987) (citing 40 A.L.R.4th 627, 630–31 (1985)).

■ Accordingly, the party's election to seek one of the remedies effectively precludes further claims on the other inconsistent remedy:

> appellants may not maintain at the same time in separate counts of one action, or in two different suits claims for rescission of a contract and restitution on the one hand and for damages for breach of the same contract together with expectation interest, on the other hand. These remedies are essentially inconsistent. *Pittsburgh Union Stockyards [Stock Yards ] v. Pittsburgh Joint Stock Company,* 309 Pa. 314, 163 A. 668 (1932); *Emery v. Third National Bank of Pittsburgh,* 308 Pa. 504, 162 A. 281 (1932); *Clement Martin Inc. v. Gussey,* 191 Pa.Super. 464, 157 A.2d 412 (1959). One may not terminate contractual obligations and seek the return of his consideration based upon the other party's promise through an action for rescission and restitution and at the same time seek the full benefits of that promise through an action for breach.

*Wedgewood Diner,* 534 A.2d at 538–39 (quoting *Raw v. Lehnert,* 238 Pa.Super. 324, 357 A.2d 574, 576 n. 3 (1976)). *See Schwartz,* 593 Pa. at 543, 932 A.2d at 889 (affirming that a party is bound by the remedy he elects).

■ The Umbelinas chose to seek rescission, an equitable remedy essentially annulling the contract, which should be "granted only where the parties to a contract can be placed in their former positions with regard to the subject matter of the contract." *Baker v. Cambridge Chase, Inc.,* 725 A.2d 757, 766 (Pa.Super.1999) (citation omitted). At trial, the Umbelinas' main argument was that rescission was proper because Adams made negligent misrepresentations in assuring Umbelinas that their house could be built on Lot 17 "without resulting in a significantly steep

slope in the front yard and driveway." Amended Complaint, at 14. The Umbelinas claimed that Adams "expressly and impliedly warranted that the grading [ ] would result in a *flat* yard and driveway" and misled them to believe the home met the township's grading requirements. Amended Complaint, at 16–17 (emphasis added).

The trial court rejected the Umbelinas' assertion that Adams had made fraudulent statements that they relied on their detriment as the steepness of finished driveway would have been obvious even before construction began. The trial court, noting that anyone other than Lance Armstrong would have difficulty in climbing the driveway, made the following findings:

The primary focus of [the Umbelinas' fraud] claim lies with the assurances that Adams gave regarding the steepness of the driveway. The court acknowledges that the driveway is steep as Adams noted, "we all knew it was steep." In fact, as the court approached the development for its view, the Umbelina residence was clearly visible from a considerable distance, perched at the apex of the development. Consequently, the court was not surprised, after traveling up the steady incline of Woodlawn Drive, to find a home with an unmatchable view. The driveway is steeper than what the court would desire, and we sympathize with the [Umbelinas'] concerns, but that is the price one pays for a picturesque view of the valley.

If the court was not startled by the steepness, nor, should it have been a post-construction revelation to anyone involved in this transaction. Once the site of the home was determined, and Mrs. Umbelina was unquestionably involved in that process, the steepness of the grade of the yard and driveway would be inevitable. Moving the house back another 10 or 20 feet would, perforce, have lessened the slope, but under no scenario does the court find that this driveway would have been an easy climb for anyone other than Lance Armstrong.

* * *

The fact remains that the Umbelinas chose this lot primarily for its cost, size, and view. With that choice, they were not only locked into a contractor, but they were also locked into a house on a hill. Perhaps, they were so enamored with the view of the valley that their perspective of the slope of the property was distorted. Regardless, we do not find that Adams' opinions, statements about codes or even his own wishful thinking regarding the driveway constitute fraudulent misrepresentations that expose him to any personal liability.

T.C.O. at 25–27. The trial court refused to find Adams Builders responsible for violating the steep slope ordinance and code requirements when he sought the approval of township officials who issued the home a certificate of occupancy without knowledge of the applicable codes and ordinance.

■■■ On appeal, the Umbelinas concede the trial court was correct in finding that Adams did not make any fraudulent misrepresentations to induce them into entering the construction agreement, but argue Adams Builders' failure to construct a house of reasonable workmanship and value constituted a material breach which justified rescission of the contract. We disagree. Our courts have established that the "only grounds upon which equity will permit rescission of an executed contract are fraud, mistake, failure of consideration, and quia timet." *New–Com Corp. v. Estate of Gaffney,* 72 B.R. 90, 93–94 (Bkrtcy.W.D.Pa.1987) (citing *Windle v. Crescent Pipe–Line Company,* 186 Pa. 224, 40 A. 310 (1898); *Hays v. Hays,* 179 Pa.

277, 36 A. 311 (1897); *Delamater's Estate*, 1 Whart. 362 (1836)).

■ The Umbelinas rely on the decision of the United States District Court for the Eastern District of Pennsylvania in *Castle v. Cohen*, 676 F.Supp. 620, 627 (E.D.Pa. 1987)[2] to claim that rescission is appropriate "when the complaining party has suffered a breach of such a fundamental and material nature that it affects the very essence of the contract and serves to defeat the object of the parties." In *Castle*, the plaintiffs sought specific performance of a stock purchase agreement with the defendants. Under this contract, the plaintiffs were required to submit an appraisal of the fair market value of the shares and the defendants were permitted to counter with their own appraisal. If the plaintiffs refused to purchase the stock at the defendants' appraised amount, the defendants were permitted to seek a third-party purchaser, but the plaintiffs retained a right of first refusal.

After both appraisals were submitted and the plaintiffs refused to buy the stock at the defendants' appraised value, the defendants sold the stock to a third-party purchaser without giving the plaintiffs a chance to exercise their right of first refusal. On appeal, the defendants claimed that the plaintiffs improperly submitted their initial appraisal at such a low value that it constituted a material anticipatory breach entitling the defendants to rescind the contract and sell to a third party without restriction. *Id.* at 626. The District Court held that the defendants' attempt to rescind the purchase agreement was improper because the plaintiffs' breach did not go to the heart of the contract as the parties agreed the stock would be sold at

its fair market value, which could be determined by the fact-finder. *Id.* at 627.

■ The rule in *Castle* is not applicable to this case as the facts in *Castle* involved the anticipatory breach of an executory contract, where an aspect of the parties' obligations had not yet been performed. Pennsylvania courts have long recognized the general principle of contract law providing that a material breach of a contract, which is vital to the existence of the contract, relieves the non-breaching party from any *continuing duty of performance* under the contract. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 560, 962 A.2d 639, 648 (2009) (citing *Berkowitz v. Mayflower Securities*, 455 Pa. 531, 534–35, 317 A.2d 584, 586 (1974) (citing 6 Williston, *A Treatise on The Law of Contracts*, § 8[64] (3d.ed.1962))).

In *LJL Transp., Inc.*, our Supreme Court found that Pilot was justified in terminating its contract with a franchisee who improperly diverted business to a direct competitor of Pilot that the franchisee owned. Even though the franchise agreement expressly gave the franchisee a right to cure a breach of the agreement, the Supreme Court found the franchisee's self-dealing and disloyalty was an incurable breach that frustrated the principal purpose of the franchise agreement. Accordingly, the Supreme Court emphasized that Pilot should not be expected to continue to perform under the agreement where the parties' basic trust had been violated:

> when there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching

---

**2.** "While we recognize that federal district court cases are not binding on this court, Pennsylvania appellate courts may utilize the analysis in those cases to the extent we find

them persuasive." *Braun v. Wal–Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa.Super.2011) (quoting *Stephens v. Paris Cleaners, Inc.*, 885 A.2d 59, 68 (Pa.Super.2005)).

party may terminate the contract without notice, absent explicit contractual provisions to the contrary.

. . .

Such a breach is so fundamentally destructive, it understandably and inevitably causes the trust which is the bedrock foundation and veritable lifeblood of the parties' contractual relationship to essentially evaporate. We find our law does not require a non-breaching party to prolong a contractual relationship under such circumstances.

*LJL Transp., Inc.,* 599 Pa. at 567–68, 962 A.2d at 652. *See also Nikole, Inc. v. Klinger,* 412 Pa.Super. 289, 603 A.2d 587, 594 (1992) (finding repudiation of a lease-purchase agreement entitled the non-breaching party to accept the breach as a rescission of the contract).

■ In this case, the Umbelinas attempted to rescind a fully *executed* contract; the Umbelinas closed on the home after accepting Adams Builders' construction of the home in exchange for the money they agreed to pay for the home under the contract. Our Supreme Court has explicitly limited a party's ability to rescind an executed contract:

the general rule is that the acceptance of a deed in pursuance of an agreement of sale is a satisfaction of all previous negotiations and covenants, and in the absence of fraud or imposition a purchaser will not be entitled to a recission of the contract and a cancellation of the deed.

*Namy v. Black,* 367 Pa. 523, 525–526, 80 A.2d 744, 746 (1951). Our courts have ruled that executed contracts cannot be rescinded or annulled in the absence of a showing fraud or mistake simply because a party found the contract to be burdensome or a financial failure. *New–Com Corp.,* 72 B.R. at 94 (citing *Pennsylvania R. Co. v. Pennsylvania–Ohio Electric Co.,* 296 Pa. 40, 48, 145 A. 686, 688 (1929); *Bittenbender v. Bittenbender,* 185 Pa. 135, 39 A. 838 (1898)) (remarking that a debtor should not be allowed to rescind a consummated contract "simply because the deal was not the financial success anticipated"). As the trial court rejected the Umbelinas' fraud claim, the Umbelinas have not proven they are entitled to rescission.[3]

In their second claim, the Umbelinas argue that the trial court's award of restitution is inadequate as this remedy fails to make them whole. The Umbelinas essentially reiterate the same arguments they offered for their request for rescission and claim they should be returned to their original positions prior to the contract. As the Umbelinas did not prove they are entitled to rescind the agreement, we find this argument meritless.

■ Lastly, the Umbelinas claim that the trial court's finding that they selected the lot with the steepest terrain is against the weight of the evidence and

**3.** Although not cited by either party, we observe that other states have held that a substantial breach of the implied warranty of habitability entitles a buyer to rescind an executed agreement for the sale of a new home. *See Eliker v. Chief Industries, Inc.,* 243 Neb. 275, 498 N.W.2d 564 (1993); *Pracht v. Rollins,* 239 Mont. 62, 779 P.2d 57 (1989); *Overton v. Kingsbrooke Development, Inc.,* 338 Ill. App.3d 321, 273 Ill.Dec. 336, 788 N.E.2d 1212 (2003); *Finke v. Woodard,* 122 Ill.App.3d 911, 78 Ill.Dec. 297, 462 N.E.2d 13 (1984).

"While the pronouncements of courts in sister states may be persuasive authority, those pronouncements are not binding on this Court." *Sternlicht v. Sternlicht,* 822 A.2d 732, 742 (Pa.Super.2003) (citing *Commercial National Bank v. Seubert & Assocs.,* 807 A.2d 297, 303 n. 9 (Pa.Super.2002)). *See Namy,* 367 Pa. at 525–26, 80 A.2d at 746 (ruling that "in the absence of fraud or imposition a purchaser will not be entitled to a recission of the contract and a cancellation of the deed").

contend that driveway's violation of the township's steep slope ordinance "alone warrants the relief of rescission." Umbelinas' Brief at 19. As the Umbelinas offer no citation to authority or further analysis, we find these claims to be waived for lack of development. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *In re W.H.*, 25 A.3d 330, 339 (Pa.Super.2011) (citations omitted); Pa.R.A.P. 2119(a).

■ On cross-appeal, Adams Builders claims the trial court's award of restitution was improper as the Umbelinas failed to establish that they were entitled to rescind the contract. Adams Builders relies on *Boyle v. Odell*, 413 Pa.Super. 562, 605 A.2d 1260, 1265 (1992), in which this Court stated:

> The purchaser [of real estate] is given the election of remedies; he may seek to rescind the deed, or in the alternative, may sue for damages. A plaintiff in these circumstances seeking rescission may not also seek damages, as such remedies would be inconsistent. However, *in addition to granting equitable relief,* in the nature of rescission, the trial court is also empowered to grant the plaintiffs restitution of appropriate losses incurred. Restitution, unlike damages, is a remedy not inconsistent with rescission.

*Boyle*, 605 A.2d at 1265 (emphasis added). This Court continued on to provide the following conditional language: *"if* the plaintiffs are found to be entitled to an order of rescission, they would also enjoy a right to restitution." *Metz v. Quaker Highlands, Inc.*, 714 A.2d 447, 449 (Pa.Super.1998) (quoting *Boyle*, 605 A.2d at 1265) (emphasis added).

In *Silverman v. Bell Sav. & Loan Ass'n*, 367 Pa.Super. 464, 533 A.2d 110, 112 (1987), this Court found it proper to allow a purchaser of commercial real estate, who had been defrauded in the transaction, to rescind the purchase agreement and collect restitutionary damages which included interest paid on money borrowed to complete the sale, taxes on the property, and insurance premiums for the property to return the buyer to the status quo. However, this Court rejected the purchasers' claim that the restitutionary award should have included the cost of repairing damage caused by vandals and costs incurred in attempting to obtain a variance as these costs "were not proximately caused by the fraud practiced by the seller." *Id.* at 116. As the trial court denied the Umbelinas' request for rescission based on fraud, the Umbelinas were not entitled to reimbursement for expenses they incurred in entering the contract.

■ Although the trial court found it was not proper to rescind the contract, the trial court provided that "equity requires an order of restitution for [Adams Builders'] faulty work." T.C.O. at 30. As the Umbelinas provided no other basis for equitable relief, it appears the trial court essentially raised a claim of unjust enrichment *sua sponte* on the Umbelinas' behalf to justify its award of restitution. We recognize that courts may grant restitutionary damages to prevent unjust enrichment by requiring a party to "disgorge the benefit he has received by returning it to the party who conferred it." *Ferrer v. Trustees of University of Pennsylvania*, 573 Pa. 310, 340, 825 A.2d 591, 609 (2002) (citing *Trosky v. Civil Serv. Comm'n*, 539 Pa. 356, 652 A.2d 813, 817 (1995) (citing Restatement (Second) of Contracts, Section 344, Comment a)). However, as Umbelinas never raised a

claim of unjust enrichment, we cannot award them restitution on that basis.[4]

The trial court reasoned that restitution was proper to reimburse the Umbelinas for the repairs they undertook to correct Adams Builders' defective construction. Even though the trial court dismissed the Umbelinas' action at law for breach of contract and breach of express and implied warranties, the trial court found Adams Builders "breached its contractual obligations" in building the Umbelinas' home with "faulty workmanship." T.C.O. at 29. Relying on *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972), the trial court ruled that Adams Builders breached the implied warranty of habitability as the home was not "functional and habitable in accordance with contemporary community standards." T.C.O. at 30 (citing *Elderkin*, 447 Pa. at 128, 288 A.2d at 777). However, we find the facts of *Elderkin* to be distinguishable as the buyers in that case elected to seek damages at law, not equitable rescission. As the implied warranty of habitability is a warranty inherent in the contract for the sale of a new home, our courts have awarded damages as a remedy for a breach of this warranty. *Ecksel v. Orleans Const. Co.*, 360 Pa.Super. 119, 519 A.2d 1021, 1026 (1987).

Although the trial court purported to award the Umbelinas restitution for the cost of their repairs, it is clear that the trial court gave the Umbelinas damages under a theory of breach of the implied warranty of habitability. Awarding the Umbelinas damages is inconsistent with their request for a rescission of the construction agreement. *See Boyle*, 605 A.2d at 1265 (emphasizing that "a plaintiff [ ] seeking rescission may not also seek damages, as such remedies would be inconsistent"). Accordingly, we are constrained to vacate the trial court's award of restitution and need not address Adams Builders' remaining arguments.

Order affirmed in part. Award of restitution vacated.

---

**4.** In order to recover for unjust enrichment, a party must show both "(1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa.Super.2011). Even if the Umbelinas had raised this claim, we note that "the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between parties is founded on a written agreement or express contract." *Id.* at 896 (citing *Schott v. Westinghouse Elec. Corp.*, 436 Pa. 279, 290, 259 A.2d 443, 448 (1969)).