J-S30040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE ADOPTION OF:  D.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  J.P. | : | No. 1889 MDA 2016 |

Appeal from the Order entered October 28, 2016
in the Court of Common Pleas of Cumberland County,
Orphans' Court Division, No(s):  083 Adoptions 2016

| | | |
|---|---|---|
| IN THE ADOPTION OF:  D.S., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  J.P., Mother | : | No. 1890 MDA 2016 |

Appeal from the Order entered October 19, 2016
in the Court of Common Pleas of Cumberland County,
Orphans' Court Division, No(s):  CP-21-DP-0000027-2015

BEFORE:  SHOGAN, RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:             **FILED JUNE 12, 2017**

J.P. ("Mother") appeals from the Orders[1] granting the Petition filed by Cumberland County Children and Youth Services ("CYS") to involuntarily terminate her parental rights to her son, D.S. (hereinafter "Child"), born in May 2014, pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b), and

---

[1] This Court, *sua sponte*, consolidated Mother's appeals from the Orders.

changing Child's permanency goal from reunification to adoption.[2]  We affirm.

The trial court thoroughly set forth the relevant factual and procedural history of this case, which we adopt as though fully set forth herein.  ***See*** Trial Court Opinion, 12/22/16, at 1-7.[3]

In this timely appeal, Mother presents the following questions for our review:

1. [Whether t]he [Trial] Court erred as a matter of law and abused its discretion in changing [Child's placement] goal to adoption and terminating [Mother's] parental rights[?]

2. [Whether t]he [Trial] Court erred as a matter of law and abused its discretion in changing the [placement] goal for [] [C]hild to adoption and terminating [Mother's] parental rights in that [Mother] is able to provide [] [C]hild with the essential parental care, control, and subsistence[?]

3. [Whether t]he [Trial] Court erred as a matter of law and abused its discretion in terminating [Mother's] parental rights in that the conditions which led to the removal or placement of [] [Child] no longer existed or were substantially eliminated[?]

_____

[2] By Orders entered on October 19 and 28, 2016, the trial court also involuntarily terminated the parental rights of Child's biological father, A.S. ("Father"), and changed Child's permanency goal to adoption.  Father filed an appeal, which is listed before this panel at Nos. 1683 and 1686 MDA 2016.

[3] We additionally observe that by an Order entered on October 7, 2016, the trial court appointed Marylou Matas, Esquire ("Attorney Matas"), as guardian *ad litem* ("GAL") to represent the interests of Child.  Attorney Matas appeared at the October 19, 2016 hearing, and filed a brief in this appeal, asserting her opinion that affirming the Orders on appeal best served Child's needs and welfare.

4. [Whether the Trial] Court was in error in determining [that] the best interest of [] [C]hild would be served by terminating [Mother's] parental rights[?]

5. [Whether t]he [Trial] Court was in error in determining [that] the best interests of [] [C]hild would be served by changing the goal for [] [C]hild to adoption, terminating parental rights and placing [] [C]hild in foster care, when family members[] have presented as a resource for [] [C]hild[,] and Mother is an available resource as well[?]

Mother's Brief at 4. Since Mother's issues are closely related (and the sparse Argument section of Mother's brief does not individually address each issue), we will address them simultaneously.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, [] 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re*] *R.I.S.*, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, [] 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As [the Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are

- 3 -

observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[T]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

This Court may affirm a trial court's decision regarding the termination of parental rights with regard to any one subsection of 23 Pa.C.S.A. § 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, we will focus on section 2511(a)(2) and (b), which provide as follows:

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of subsection 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements:  (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).  The grounds for termination of parental rights under subsection 2511(a)(2) are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.  *In re A.L.D.*, 797 A.2d 326,

337 (Pa. Super. 2002); *see also In re Adoption of S.P.*, 47 A.3d at 827 (stating that "[a] decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.").

Regarding section 2511(b), the trial court inquires whether the termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). There is no bond worth preserving between a child and a biological parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Further, it is appropriate to consider a child's bond with his or her foster parent(s). *In re T.S.M.*, 71 A.3d at 268.

Finally, "[w]hen we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion." *In re N.C.*, 909 A.2d 818, 822 (Pa. Super. 2006). "[T]he best interests of the child[,] and not the interests of the parent[,] must guide the trial court, and the burden is on [CYS] to prove that a change in goal would be in the child's best interest." *In re R.I.S.*, 36 A.3d at 573 (citations omitted). The safety, permanency, and well-being of the child must take precedence over all other considerations. *In the Matter of S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008).

Here, Mother argues that the trial court erred in terminating her parental rights to Child, and changing Child's permanency goal to adoption, where "the original reasons for [] Child's placement ha[ve] been substantially eliminated[,]" and Mother has "complied [with] and accomplished many of the [permanency plan] goals" set for her by CYS. Mother's Brief at 11. Specifically, Mother alleges that she (1) "kept in contact with CYS on a regular basis"; (2) participated in parenting education; (3) participated in some mental health counseling; (4) "somewhat met" the goal of abstaining from abusing drugs and alcohol; (5) "did attend visits [with Child] to the extent [Mother] could"; and (6) had adequate housing to accommodate Child. *Id.* at 11-12. Mother contends that "[b]ecause of [her] substantial compliance with the permanency plan, … terminating her parental rights was not in [] Child's best interest." *Id.* at

J-S30040-17

12.[4]

In its thorough Opinion, the trial court addressed Mother's claims, set forth the relevant law, and determined that (1) termination of Mother's parental rights to Child was warranted, supported by clear and convincing evidence, and in Child's best interests, under 23 Pa.C.S.A. § 2511(a)(2) and (b); and (2) changing Child's placement goal to adoption was proper. **See** Trial Court Opinion, 12/22/16, at 9-16. The trial court's findings are supported in the record; its legal conclusions are sound; and we discern no abuse of discretion by the trial court. We therefore affirm, based on the trial court's Opinion, the Orders terminating Mother's parental rights to Child and changing Child's permanency goal to adoption. **See id.**

---

[4] Mother does not elaborate on this claim, or engage in any discussion of 23 Pa.C.S.A. § 2511(b), aside from this single reference to the best interests of Child. Accordingly, we could, though we decline to, find this claim waived. **See Umbelina v. Adams**, 34 A.3d 151, 161 (Pa. Super. 2011) (stating that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." (citation omitted)); **see also** Pa.R.A.P. 2119(a).

- 8 -

Orders affirmed.[5]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2017

---

[5] We note that we are cognizant of the recent decision of our Pennsylvania Supreme Court in **In re L.B.M.**, 156 A.3d 1159 (Pa. 2017), wherein the Court held that 23 Pa.C.S.A. § 2313(a) mandates that a trial court appoint counsel for a child in a contested termination of parental rights case, and the failure to do so is structural and can never be harmless. **See id.** at 1165-67, 1168-69. Justice Wecht's lead Opinion, joined by two other Justices in the following regard, further opined that a trial court in such proceedings is required to appoint a *separate*, independent attorney to represent a child's *legal interests* even when the child's GAL, who is appointed to represent the child's best interests, is an attorney. **See id.** at 1167-68. However, four Justices disagreed with that portion of the lead Opinion, holding that such separate representation would be required *only if* the child's best interests and legal interests were in conflict. **See generally id.** at 1170-79. In the instant case, unlike in **L.B.M.**, this issue of separate representation for the two-year-old Child's legal interest was never raised by any of the parties. Moreover, Attorney Matas competently represented Child's best interests and legal interests, and, notably, such interests were never in conflict.

IN THE INTEREST OF D.S.,   : IN THE COURT OF COMMON PLEAS OF
A Minor,                    : CUMBERLAND COUNTY, PENNSYLVANIA
~~███████████~~            : ORPHAN'S COURT DIVISION
Appeal of J.P., Mother     :
                           : NO. CP-21-DP-0000027-20 15

IN RE: OPINION PURSUANT TO PA.R.A.P. 1925

Peck, J., December 22, 2016 –

    A hearing was held before this Court on October 19, 2016 regarding the proposed goal change for D.S. from reunification to adoption, as well as regarding the Agency's Petition to terminate Appellant's parental rights. At the conclusion of the October 19, 2016 hearing, this Court deemed the evidence closed and took the matters under advisement. On October 28, 2016, this Court issued a Permanency Review Order changing the permanency goal for D.S. to adoption. In a separate order of October 28, 2016, this Court issued a Final Decree terminating Appellant's parental rights to D.S. On November 18, Appellant filed Statement of Errors Complained of on Appeal. The Errors complained of are as follows:[1]

1) The Honorable Court erred as a matter of law and abused its discretion in changing the goal to adoption and terminating Appellant's parental rights.

2) The Honorable Court erred as a matter of law and abused its discretion in changing the goal for this child to adoption and terminating Appellant's parental rights in that Appellant is able to provide the child with essential parental care, control, and subsistence.

3) The Honorable Court erred as a matter of law and abused its discretion in changing the goal for this child to adoption and terminating Appellant's parental rights in that conditions which led to the removal or placement of the child no longer existed or were substantially eliminated.

4) This Honorable Court was in error in determining the best interest of the child would be served by terminating Appellant's parental rights.

---

[1] Concise Statement of Errors Complained of on Appeal, November 18, 2016.

5) This Honorable Court was in error in determining the best interests of the child would be served by changing the goal for these children to adoption, terminating parental rights, and placing the child in foster care, when family members, have presented as a resource for the child and Mother is available as a resource as well. [sic]

## STATEMENT OF FACTS

On October 4, 2016, the Agency filed their Petition for Involuntary Termination of Parental Rights of Alleged Mother, J.P., on the basis of 23 Pa.C.S. §§2511 (a)(2), (a)(5) (a)(8), and (b).[2] A Goal Change and Involuntary Termination of Parental Rights hearing was held on October 19, 2016.[3] The following pertinent evidence was presented at the hearing or included in the record.

Appellant is the biological mother of D.S., born May 29, 2014. The child's biological father is A.S.[4] On January 6, 2015, the Agency received a referral concerning D.S.[5] The referral stated D.S. was neglected, had moderate to severe diaper rash as a result of neglect, had been "bopped on the mouth" for making standard baby noises, was left for extended period with E.S., his current foster mother, and that drug use was occurring in the household.[6] (E.S. is the mother of the Child's half-sister, where A.S. is the father of both D.S. and E.S.'s daughter.) On January 21, 2015, J.P was arrested after police were called to the residence and found drugs.[7]

---

[2] Petition for Involuntary Termination of Parental Rights of Mother, [J. P.], under Section 2512 of the Adoption Act, October 4, 2016.
[3] See, Transcript of Proceedings, Permanency review Hearing/Termination of Parental Rights, October 19, 2016 (Peck, J.) (hereinafter "N.T. at ___").
[4] A.S.'s parental rights were also terminated by this Court, under a separate order, and he has also filed an appeal at both the Dependency and Adoptions dockets.
[5] Shelter Care Application, (February 5, 2016), at 3, CCCYS Exhibit 2 (hereinafter "Shelter Care Application"). J.P. was well-known to the Agency at the time, as four of her other children had been placed out of her care due to concerns of substance abuse and inadequate knowledge and parenting skills. Id.
[6] Id. at 3.
[7] Id.

2

During the ensuing investigation, the Agency learned J.P. and A.S. had regularly left D.S. in the care of E.S., for periods of up to several weeks, beginning when he was just two weeks old.[8] He was in her care for significant periods throughout 2014 prior to the referral in January 2015.[9] D.S. was officially placed in the legal and physical custody of E.S. on February 5, 2015, and officially adjudicated dependent on February 19, 2015.[10] The Child has been in the custody of E.S. continually since that time. E.S. filed a Report of Intent to Adopt on October 3, 2016.[11] E.S. testified that the Child calls her mom, and calls P.F., her partner of seven years, dad.[12] E.S. and P.F provided the sole financial support for the Child until E.S. became a formal kinship caretaker through KidsPeace in mid-2016. E.S. manages all of the Child's healthcare needs.[13] The Child was diagnosed with MRSA in November 2015, and was in treatment through early 2016.[14] He recovered well under the care of his doctors and E.S.[15] The Agency caseworker reported the Child is very bonded with E.S. and gets along well with his half-sister.[16]

A Family Service Plan was put in place for Appellant.[17] The following evidence was presented in regards to the goals in Appellant's Family Service Plan:[18]

a. <u>To Cooperate with Cumberland County Children and Youth Services:</u> The Agency alleged this goal was being met.[19] Appellant testified that through the parenting classes she has attended she has identified that she can be defensive with and does not trust the Agency, because she herself was removed from her

<hr>

[8] N.T. at 56; Shelter Care Application at 3-4; Master's Recommendation for Adjudication and Disposition – Child Dependent, February 19, 2015, in CCCYS Exhibit 1.

[9] N.T. at 56.

[10] Master's Recommendation for Adjudication and Disposition – Child Dependent, February 23, 2015, in CCCYS Exhibit 1.

[11] Report of Intention to Adopt, October 3, 2016.

[12] N.T. at 47, 56.

[13] Id. at 57.

[14] Id. at 34; see Judicial Conference Report, November 24, 2016, in CCCYS Exhibit 1.

[15] See, Judicial Conference Report, November 24, 2016, in CCCYS Exhibit 1.

[16] N.T. at 34.

[17] Family Service Plan, February 8, 2016.

[18] See, Petition for Involuntary Termination of Parental Rights of Mother, [J. P.], under Section 2512 of the Adoption Act, October 4, 2016.

[19] Petition for Involuntary Termination of Parental Rights of Mother, [J. P.], under Section 2512 of the Adoption Act, October 4, 2016.

mother's custody at a young age.[20] Appellant testified that she has been attending a class at local church to help her work on forgiveness and be more open.[21]

b. Improve Parenting Skills: The Agency alleged this goal was not being met.[22] Appellant received parenting education while inpatient for drug and alcohol treatment at Kindred House, from mid-July 2015 through her release at the end of January 2016. While incarcerated between February 4, 2016 and April 4, 2016, she participated in parenting classes through the George Junior program, which consists of parenting classes once a week and weekly visitation. In April 2016 after Appellant was released from jail she was referred to Alternative Behavior Consultants (ABC) for a parenting skills evaluation, but she did not attend the scheduled evaluation. Appellant informed the Agency she wanted to do her parenting classes through another agency but did not sign a release or present the Agency with information regarding those classes. At the time of the hearing, the Agency had no confirmed evidence Appellant was participating in parenting classes as ordered. Appellant stated that parenting classes she has attended have helped her with her stress management and coping skills.[23]

c. Remain Drug and Alcohol Free: The Agency alleged this goal was not being met.[24] Appellant was released from inpatient treatment at Kindred House on January 19, 2016, but tested positive for cocaine at the end of January. As a result she was reincarcerated on a parole violation on February 4, 2016. After her release in April 2016, Appellant began intensive outpatient drug and alcohol treatment, successfully completing the program in June 2016.

---

[20] N.T. at 105.

[21] Id.

[22] Id. at 15-16.

[23] Id. at 105.

[24] Id. at 18-20; See, Gaudenzia, Inc., Treatment Plan (January 11, 2016) in CCCYS Exhibit 5; Drug and Alcohol Treatment Update Report, Letter from Kimberly Morgan, Roxbury Treatment Center Outpatient Counselor, to Jan Fry, CCCYS Caseworker (April 21, 2016), in CCCYS Exhibit 5.

4

However, Appellant tested positive for cocaine again on August 10, 2016 and was incarcerated again from August 11, 2016, through August 24, 2016. Appellant participated in another round of intensive outpatient drug and alcohol treatment, which she completed on October 14, 2016. Appellant was placed in restorative sanctions program and all drug screens she has completed since August (two to three per week) have been negative. Appellant is on probation through February 2016.

d. To Maintain Contact With the Child: The Agency alleged this goal was not being met.[25] During Appellant's first incarceration (during the life of this case), from January 21, 2015 through July 13, 2015, she did not have visitation with the Child. Appellant could have had visitation if she put E.S.'s name on a visitor's list, but she did not do that. Then, while Appellant was in inpatient treatment at Kindred House, between mid- July 2015 and the end of January, 2016 she had visits twice a month. The Agency provided transport for the Child to and from the facility. The visits were originally supposed to be overnight visits but the Kindred House staff requested the visits be changed to day time visits only after the Child fell off the bed twice on an overnight visit on September 1, 2016, and Appellant did not report it to the staff at the time.[26] After Appellant was discharged on January 19, 2016, she refused to have supervised visitation with the Child at ABC, so no visitation occurred. However, after she was reincarcerated on February 4, 2016, visitation took place through the George Junior Republic prison visitation program. That organization supervised five visits between Appellant and D.S.[27] Appellant was again referred to ABC for supervised visitation and attended eight out of fourteen visits offered between May 13, 2016 September 27, 2016.[28]

---

[25] Petition for Involuntary Termination of Parental Rights of Mother, [J. P.], under Section 2512 of the Adoption Act, October 4, 2016. See, N.T. 20-22.
[26] Id. at 20.
[27] Clinical Discharge Summary, George Junior Republic, April 11, 2016, CCCYS Exhibit 7.
[28] N.T. at 6.

5

Beginning in June, Appellant was allowed to participate in visits at the Agency arranged for A.S.. Of seventeen visits offered between June 15, 2016 and October 19, 2016, Appellant attended four visits. Appellant testified that she had not been able to attend recent Monday visits because they conflicted with appointments, required community service, and AA/NA meetings.[29]

e. To Participate in Case Planning: The Agency alleged this goal was not being met.[30] Appellant did not participate in the Child's doctor appointments or otherwise contact E.S. to get updates on the Child.[31]

f. To Develop an Alternative Plan if Reunification is Not Possible: The Agency alleged this goal was not being met.[32] Appellant stated she wants the Child to live with A.S.'s mother in Washington, DC.[33] She did not take any affirmative steps towards developing that option.

The Agency also had concerns about Appellant's mental health.[34] Appellant was to complete a mental health evaluation, but had been unable to do so recently due to issues with her insurance. The Agency was aware of a past diagnosis of bipolar disorder, but did not know if she currently had that diagnosis.[35] The Agency was aware Appellant started some type of treatment through PA Counseling Services in June 2016, but had not completed treatment. Appellant testified that she was participating in weekly counseling sessions at the Stevens Center, and that one of the reasons she relapsed earlier this year was because she became very depressed after PA Counseling changed her medication.[36] Appellant stated that she was currently not on medication but that she was scheduled to

---

[29] Id. at 100.
[30] Petition for Involuntary Termination of Parental Rights of Mother, [J. P.], under Section 2512 of the Adoption Act, October 4, 2016.
[31] N.T. at 103.
[32] Petition for Involuntary Termination of Parental Rights of Mother, [J. P.], under Section 2512 of the Adoption Act, October 4, 2016.
[33] N.T. at 103.
[34] Id. at 22.
[35] Id. at 22.
[36] Id. at 102.

6

see a psychiatrist the week after the hearing, for the purpose of getting backing on medication.[37] The caseworker testified Appellant had not made the Agency aware of either of these facts, and therefore had not requested any form of verification.[38]

It was the Agency's position that Appellant is unable to resume care of the Child.[39] The Agency alleged "[J.P.] has not demonstrated the ability to maintain her sobriety, remain free of criminal activity, participate consistently in drug and alcohol counseling and be successfully discharged and has not successfully completed parenting sessions... she needs to participate in parenting education and demonstrate skills that she has learned."[40] Furthermore, the Agency alleged J.P.'s drug and alcohol and criminal issues have prevented her from caring for her children.[41] The Agency alleged the child was in need of permanency.[42]

Appellant objected to the goal change and termination of parental rights. Appellant desired the Child to live with A.S.'s mother or sister.[43] Appellant stated she believed A.S.'s mother has been supportive and would foster contact between Appellant and the Child in the future, whereas she does not have contact with E.S.[44]

After the hearing this Court issued a Permanency Review Order changing the permanency goal from reunification to adoption[45] and a Final Decree granting the Petition for the Involuntary Termination of Parental Rights.[46] The instant appeal was filed November 18, 2016.[47]

---

[37] Id. at 42.

[38] N.T. at 42.

[39] Petition for Involuntary Termination of Parental Rights of Mother, [J. P.], under Section 2512 of the Adoption Act, October 4, 2016.

[40] Id.

[41] Id.

[42] Id.

[43] N.T. at 103.

[44] Id. at 103.

[45] Permanency Review Order, October 28, 2016.

[46] Final Decree, RE: Petition for Involuntary Termination of Parental Rights of Mother, J.P., Under Section 2512 of the Adoption Act, October 28, 2016 (Peck, J).

[47] Concise Statement of Errors Complained of on Appeal, November 18, 2016.

## DISCUSSION

We begin by addressing the standard of review applicable to the Appellant's claims. Pennsylvania appellate courts defer to the trial courts, "adher[ing] to the view that the trial court is in the best position to determine credibility, evaluate the evidence, and make a proper ruling." In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994). Absent an abuse of discretion or error of law, where the trial court's findings are supported by competent evidence, an appellate court must affirm the trial court even though the record could support the opposite result. In the Interest of R.J.T., 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010); In re Adoption of Atencio, 650 A.2d 1064 (The Superior Court improperly overturned a trial court's ruling where competent evidence supported the trial court's decision). Pennsylvania courts have held that "an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." In re Adoption of S.P., 47 A.3d 817, 826 (Pa. 2012) (internal citations omitted).

In Atencio, a case regarding involuntary termination of parental rights, the Supreme Court found that the Superior Court improperly vacated the trial's court's ruling where competent evidence supported the trial court's decision. In re R.I.S., 36 A.3d 567, 573 (Pa. 2011), citing In re Adoption of Atencio, 650 A.2d 1064. The Court reasoned that because the trial court reached its conclusion on the basis of competent evidence, the Superior Court should not have disturbed the decision. The principle set out in Atencio applies to the instant case, and because competent evidence supports the trial court's decision, the ruling should stand.

A. The Record Contains Competent Evidence Sufficient for this Court to find the Goal Change Was in the Child's Best Interest

8

Appellant has alleged this Court "erred as a matter of law and abused its discretion in changing the goal to adoption and terminating Appellant's parental rights."[48] Appellant has not alleged any facts to support her claim that the Court abused its discretion, and this Court is therefore unable to address it with specificity. The record contains no evidence that this court demonstrated manifest unreasonableness, partiality, prejudice or ill-will.

As to whether this Court erred as a matter of law, the record contains competent evidence to support this Court's decision. When evaluating whether a goal change should be granted so that the child may be adopted, the court's primary concern is the best interest of the child. In the Interest of R.J.T., 9 A.3d 1190 (2010). The court is to consider a number of factors, including the matters determined at regular permanency hearings under 42 Pa.C.S. §6351(f) and "all other relevant evidence presented at the hearing" 42 Pa.C.S. §6351(f.1). Id. The court is to consider what outcome would be "best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. §6351(f.1)(2), §6351(g); In the Interest of R.J.T., 9 A.3d 1190 (2010). The best interests of the child, not the parents, are the court's predominant concern. Id. at 1183-84.

Appellant alleges that this Court erred as a matter of law in granting the goal change because Appellant "is able to provide the child with essential parental care, control, and subsistence," the "conditions which led to the removal or placement of the child no longer existed or were substantially eliminated," and because other family members and Appellant are available as a resource for the Child.[49]

This Court agrees with the Agency's assessment in that this Court finds Appellant has been unable to maintain sobriety and has not demonstrated a commitment to actively parenting her child. First, Appellant has shown that she is unable to remain sober. Compounding the issue, Appellant has thrice been incarcerated for her drug use, thereby making her unavailable to care for the Child at an age when he most needs a parent's

---

[48] Id.
[49] Id.

9

care. The child was adjudicated dependent in February 2015 in significant part due to his parent's drug use. After the Child's removal, Appellant agreed to a service plan that required her to stop using drugs and seek appropriate treatment.[50] The record shows Appellant relapsed twice in 2016. Both times, she completed intensive drug and alcohol treatment less than two weeks prior to her relapse.[51] While Appellant testified that parenting classes have been helpful and that she has learned to recognize her triggers, this Court agrees with the Agency's assessment that Appellant has not shown herself capable of maintaining sobriety such that she is able to care for the Child.

Second, Appellant has not demonstrated a commitment to maintaining regular contact with the Child. Appellant's visitation with the child has been inconsistent and at times non-existent. Appellant had no visits with the Child for six months in 2015 (from late January through mid-July), at least in part because she did not take the first step toward arranging for regular visitation at the prison – that is, she did not even take the step of putting E.S.'s name on a list of authorized visitors so that E.S. could bring the Child to visit. After Appellant went to inpatient treatment at Kindred House, Appellant had the opportunity for overnight visits with the Child – but those were soon limited to daytime visits after Appellant failed to follow facility policies.[52] Appellant participated in eight of the fourteen visits offered through Alternative Behavioral Services (ABC) between May and October 2016,[53] and in four of seventeen visits offered by the Agency between mid-June and October 2016, with her last visit through either organization falling on September 23, 2016.[54] In sum, in the six months between May and October 2016, Appellant participated in 12 visits with the Child. Those visits took place irregularly. The courts place a duty on parents to affirmatively care for their children at all times. In re J.I.R., 808 A.2d 934, 938 (Pa. Super. 2002), quoting In the Interest of

---

[50] Family Service Plan, February 8, 2016.

[51] N.T. at 19.

[52] This Court initially ordered the overnight visits over the objection of the Agency, hoping to give Appellant the chance to bind with her child and prove herself capable of responsibly caring for the child.

[53] N.T. at 6.

[54] Id. at 21. Appellant was incarcerated for two weeks in August, 2016, during which time prison visitation was not offered. See, N.T. at 19.

10

C.S., 761 A.2d 1197, 1201 (Pa. Super. 2000) ("Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances.") Even incarcerated parents have a duty to utilize all resources available to them to maintain a relationship with the child and maintain a place of importance in the child's life. In re R.I.S., 36 A.3d 567, 572-574 (Pa. 2011). Appellant has not fulfilled that duty. Appellant has not maintained regular communication with or about the Child, even at times when she was not incarcerated. She does not regularly check in with the Agency caseworker concerning the Child or contact E.S., citing a vague history of "problems" between her and E.S. While she has made some efforts, they have been inconsistent, at times insufficient, and fall short of providing care for the Child.

Next, this Court considered the bond between Appellant and the Child. The record shows the Child is bonded with E.S. and behaves as if she is his mother. Appellant and the Child do not share such a bond. The prison visitation specialist involved in the George Junior Republic prison visitation program (where visits took place in February and March 2016) reported the Child did not appear to be bonded with Appellant, considering her more of a playmate than a parent.[55] Additionally, the ABC visitation supervisor, Ms. Snyder, reported that in six out of the eight visits she observed between May and September of this year, she had concerns regarding Appellant's interactions with the Child.[56] Ms. Snyder stated that while there were occasionally moments when Appellant played with D.S., she noted an overall lack of engagement. Appellant did not really react upon seeing D.S., and both Appellant and D.S. were content to let D.S. play alone with his toys. In contrast, Ms. Snyder stated that from her brief observations of D.S. with his foster mother, she saw D.S. was very attached to E.S.[57]

---

[55] Clinical Discharge Summary, George Junior Republic, April 11, 2016, CCCYS Exhibit 7.
[56] N.T. at 5.
[57] Id. at 9.

Finally, this Court considered the relatives Appellant proposed to care for the Child. As noted elsewhere,[58] the relatives proposed are A.S.'s mother and sister, and A.S. failed to bring forth all of his mother's information so that the Agency could check on her as a resource, or to present his sister as a viable option, until such time as the Child had already bonded with E.S. and to remove him would have been harmful. Appellant provided the Agency with no additional information to allow the Agency to fully investigate the viability of placing D.S. with either relative.

This Court also has concerns about mother's mental health. While she had previously been diagnosed as bipolar, she has not been re-evaluated and did not present testimony, either through the testimony of a mental health professional or medical records, as to her current mental health status. She is to be commended for recently undergoing counseling services and for making an appointment with a psychiatrist, however, she has not signed any releases or been clear as to a professional's opinion of her current mental well-being. Over the pendency of this case, the Court noted Appellant's manner in the court room was sometimes disoriented and disengaged, and at others, quick to voice angry comments out of turn. While this Court understands being in the courtroom can produce emotional reactions (which may be different at various times even for the same person) her behavior was such that it caused this Court to have concerns that her mental health issues were not being adequately addressed and could negatively affect the Child.[59]

This Court finds E.S. and her household have provided consistent, committed care to D.S. The Child has spent most of his life in her care and knows her as his mother and P.F. as his father. His older half-sister is in the same household. There is credible evidence the Child shares little, if any, bond with Appellant. Relatedly, the Child has not seen the relatives Appellant holds out as proposed caretakers since at least February 2015. The record supports this Court's finding that it is in the best interests of the Child

---

[58] See, at the same docket, the Opinion Pursuant to Pa.R.A.P. 1925 filed in support of our Order of October 28, 2016, terminating A.S.'s Appellant rights.

[59] Appellant testified that in the summer of 2016, changes to her medication led to extreme depression. N.T. at 102.

to change the goal from reunification with Appellant to adoption with E.S. and her family to which he is bonded. As to the factors in 42 Pa.C.S. §6351(f), the forgoing analysis encompasses consideration of those factors, particularly the factors concerned with the appropriateness of continuing the current placement and Appellant's progress towards permanency goals.[60] This Court found that granting the goal change is the outcome "best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. §6351(f.1)(2). This Court now turns to consider the Agency's Petition to Terminate Parental Rights.

B. <u>The Record Contains Competent Evidence Sufficient for this Court to Find the Agency has Proven at least One Statutory Ground of 23 Pa.C.S. §2511(a) Has Been Met</u>

Appellant alleges this Court erred as a matter of law or abused its discretion in terminating parental rights because: 1) "Appellant is able to provide the child with essential parental care, control, and subsistence," 2) the "conditions which led to the removal or placement of the child no longer existed or were substantially eliminated," and 3) other family members are available as a resource for the Child.[61]

Appellant has not alleged any facts to support her claim that the Court abused its discretion, and this Court is therefore unable to address it with specificity. The record contains no evidence that this court demonstrated manifest unreasonableness, partiality, prejudice or ill-will.

As to whether this Court erred as a matter of law, the record contains competent evidence to support this Court's decision. When evaluating a petition for termination of parental rights, the court must conduct a bifurcated analysis. First, the Court must determine if the Agency has proven that at least one of the statutory grounds of

---

[60] Two factors, 42 Pa.C.S. §§6351(f)(10-11), do consider the Child's relationships with siblings; other than the relationship with the half-sister with whom the Child currently resides, the Child's siblings relationships were not discussed at the hearing. The record indicates the child has resided with E.S. for most of his life and not with any of his other siblings except for E.S.'s daughter, his half-sister.

[61] Concise Statement of Errors Complained of on Appeal, November 18, 2016.

13

termination set out in 23 Pa.C.S. §2511(a) has been met. See, In re B.L.W., 843 A.3d 380, 384 (Pa. Super. 2004)(*en banc*). The focus of the inquiry is the conduct of the parents. Id. at 383. The burden is on the Petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. In re R.N.J., 985 A.2d 273, 276 (Pa. Super. 2009).

The Agency sought termination on the grounds of 23 Pa.C.S. §§2511 (a)(2), (a)(5), and (a)(8).[62] Appellant seemingly challenges this Court's decision with regards to (a)(2) and (a)(8). 23 Pa.C.S. §2511(2) allows for termination where:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. §2511(2).

This Court finds that Appellant displays continued incapacity, neglect, or refusal to care for her child and the conditions and causes of her incapacity cannot or will not be remedied. As discussed, supra, in the twenty months the Child has been adjudicated dependent, Appellant has made inconsistent progress towards the goals established for her. Importantly, Appellant has shown herself unable to maintain sobriety even after participating in intensive treatment. While Appellant stated that she currently attends AA/NA meetings almost every day and has a sponsor, this Court notes that at the time of the hearing Appellant was only five days removed from the completion of her most recent round of treatment. Appellant's recent history shows that she has struggled to remain drug free for any amount of time when not participating in intensive treatment. Correspondingly, Appellant has not demonstrated she can refrain from criminal activity (i.e., drug use). Appellant was incarcerated three times during the pendency of the case, totaling approximately eight months. These periods of incarceration necessarily

---

[62] Petition for Involuntary Termination of Parental Rights of Mother, [J. P.], under Section 2512 of the Adoption Act, October 4, 2016.

14

prevented Appellant from caring for her child during those periods, and she did not, during those times, strive to maintain a place of importance in the Child's life.

Appellant has inconsistently visited the child or even communicated concerning him. Appellant participated in approximately twelve visits between May and October 2016, but many more were offered to her.[63] When Appellant did visit with the Child, two different observers characterized the nature of the relationship as relatively unengaged, or more like that of playmates than parent and child. This Court finds no significant bond between Appellant and the Child. Again, as to the relatives of A.S. proposed as caretakers, Appellant neglected to reasonably present a fully developed alternative placement plan for the Child until it was past a point where moving the Child would not be beneficial to his well-being.

Having found the Agency met the statutory ground for termination in §2511(a)(2), this Court turns to the analysis required by section §2511(b).

## C. The Record Contains Competent Evidence Sufficient for this Court to Find the Termination of Parental Rights was in the Child's Best Interest

Appellant has alleged this Court was "in error in determining the best interest of the child would be served by terminating Appellant's parental rights."[64] Appellant has not alleged any facts to support her claim that the Court abused its discretion, and this Court is therefore unable to address it with specificity. The record contains no evidence that this court demonstrated manifest unreasonableness, partiality, prejudice or ill-will.

As reasoned, in Section A, supra, this Court finds through similar analysis that the termination of parental rights is in the child's best interest. The best interest of the child standard requires the court "to give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The courts have

---

[63] N.T. at 20-22. Appellant's claims that the she had missed recent Monday visits because they conflicted with appointments, community service, and NA meetings are unpersuasive. The Agency routinely works with parents to arrange visitation around busy schedules.

[64] Concise Statement of Errors Complained of on Appeal, November 18, 2016.

stated that the emotional needs and welfare of the child have properly been interpreted to include "intangibles such as love, comfort, security, and stability." In re K.M., 53 A.3d 781, 791 (Pa. Super. 2012). Continuity of relationships and impact on bonds between parent and child should be considered. In the interest of C.S., 761 A.2d 1201 (Pa. Super. 2000).

This Court found the Child is bonded to his foster mother, E.S. The Child recognizes E.S. as his Mother. The Court noted that the Child had been in the care of E.S., foster mother, for substantial periods starting when he was just two weeks old, and in her care continuously from the time he was eight months old onward. The child also has good relationships with P.F., his father figure, and with his half-sister.

The Child has not lived with Appellant for over twenty months, and the record shows Appellant's involvement with the Child since that time has been sporadic.[65] The record shows Appellant has not shown herself capable of maintaining sobriety in the long term such that she can provide stable care for her child. This Court found that to remove the Child from the home where he has spent most of his life would be harmful to the Child. The record contains competent evidence to support this finding.

## CONCLUSION

This Court finds the issues raised by Appellant on appeal are without merit. For the reasons articulated in the above opinion, this Court respectfully requests the Superior Court of Pennsylvania to affirm this Court's order granting the Agency's Petition for Involuntary Termination of Rights of Appellant, J. P.

BY THE COURT,

Christylee L. Peck,                    J.

---

[65] See, In re K.Z.S., 946 A.2d 753 (Pa. Super. 2008) (Stating that no bond that is worth preserving is formed between a child and parent where the child is in foster care for most of the child's life, and the resulting bond with the parent is attenuated).

16