J-A18029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1405 WDA 2022 |

Appeal from the Order Entered November 1, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): CP-02-AP-0000273-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: S.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1407 WDA 2022 |

Appeal from the Order Entered November 1, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): CP-02-AP-0000274-2021

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY LAZARUS, J.:　　　　　**FILED:  September 29, 2023**

　　　B.B. (Mother) appeals from the orders,[1] entered in the Court of Common

Pleas of Allegheny County, terminating her parental rights to her minor

---

[1] Mother has complied with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), by filing a separate notice of appeal for each trial court docket number—1405 WDA 2022, and 1407 WDA 2022. **See In re: M.P.**, 204 A.3d 976 (Pa. Super. 2019) (applying **Walker** holding in goal change and termination of parental rights matters). This Court, by order dated January 11, 2023, consolidated the appeals. **See** Pa.R.A.P. 513.

children, A.B. (born 12/17) and S.B. (born 8/15) (collectively, Children) pursuant to sections 2511(a)(2), (5), (8), and (b) of the Adoption Act.[2] After our review, we affirm.

R.N. (Father), who is not a party to this appeal, was convicted of rape and abuse of a child while residing in Massachusetts; he is a lifetime Megan's Law registrant. In 2018, the Allegheny County Office of Children, Youth and Families (CYF) received a referral indicating that Mother was allowing Father to reside in her home. Due to safety concerns for the Children, CYF referred Mother for services and placed Children in foster care for a brief period.[3] CYF returned Children to Mother in April 2018. Throughout this time, Father was prohibited from having contact with Children.[4]

In March 2020, upon learning that Father was again living with Mother, CYF again became involved with this family. *See* N.T. Termination Hearing (Day 1), 9/23/22, at 122. On April 28, 2020, Children were adjudicated dependent and aggravated circumstances were found as to Father. *Id.* at 123. *See* 42 Pa.C.S.A. § 6302. Mother was ordered to undergo psychological testing, continue mental health treatment, and, after an altercation between

---

[2] 23 Pa.C.S.A. §§ 2101-2938.

[3] Mother has a history of involvement with CYF, including 39 referrals dating back to 2008. *See* N.T. Termination Hearing, 9/23/22 (Day 1), at 112, 114.

[4] Father was also prohibited from contact with Mother's two other children, who are not subjects of this appeal, and who were placed with their biological father.

Mother and Father in July 2020, was also ordered to enroll in intimate partner violence (IPV) counseling.

On July 28, 2020, October 30, 2020, February 16, 2021, and October 15, 2021, the court held permanency review hearings. At each hearing, Mother was found to be minimally compliant and to have made minimal progress with her goals. Children have been in foster care since April 2020, and Mother has had supervised visits.

In June 2021, Children were placed in a different foster home with C.M. and J.M. (Foster Parents), which was considered a long-term adoptive placement. On December 28, 2021, CYF filed a petition to terminate Mother's parental rights to Children.

The parties appeared for the first day of the hearing, on September 23, 2022. Mother was represented by Brianna Herzing, Esquire, of the Allegheny County Bar Foundation Juvenile Court Project (JCP). The court heard testimony from several witnesses, including former foster parent Lisa Ellis, Detective Brian Letters, CYF transportation specialist Perry Smith, Adoption Connection PA foster care worker Kelly Calve, CYF adoption home study worker Shante Washington, CYF caseworker Christina Moran, Armstrong School District Director of Special Education and Student Services Michael Glew, Hilltop Family Care Connection program coordinator Kelly Cavanaugh, and Adoption Connection PA foster care aide Jamie Leasure. Eli Zlokas, Esquire, attorney for Children, was also present.

The court scheduled the second day of the hearing for September 30, 2022. On September 26, 2022, both Mother and her counsel, Attorney Herzing, filed motions; Mother sought a continuance and removal of Attorney Herzing due to alleged ineffectiveness, and Attorney Herzing requested leave to withdraw due to a breakdown in the attorney-client relationship. The parties appeared on September 26, 2022, and the court heard argument on the motions. The court granted Mother's continuance request, to October 24, 2022,[5] allowed Mother to retain private counsel or appear *pro se*, and ordered Attorney Herzing to remain as standby counsel for Day 2 of the proceedings in the event Mother appeared *pro se.*

On October 24, 2022, Mother did not appear for the hearing. Attorney Herzing did appear. **See** N.T. Termination Hearing (Day 2), 10/24/22, at 3-

_____

[5] On October 20, 2022, Mother filed two appeals to this Court with respect to the continuance order; those appeals were consolidated by this Court *sua sponte*. Mother argued she required more time to prepare for the second day of the hearing. This Court quashed the appeals, stating:

> These appeals have been taken from the orders of September 27, 2022, granting Appellant's request for a continuance, and also indicating that the second day of the Termination of Parental Rights Proceedings was continued to October 24, 2022. On November 30, 2022, this Court issued a Rule to Show Cause order with regard to the finality or appealability of the September 27th order. **See** Pa.R.A.P. 341(b)(1) (a final order is any order that disposes of all clams and of all parties). On December 2, 2022, Appellant responded but failed to present legal argument to justify this Court's jurisdiction. Accordingly, the appeals at 1294 and 1295 WDA 2022 are hereby quashed.

Order, 12/08/22.

- 4 -

4. Day 2 of the hearing proceeded in Mother's absence. Kristen Hunsicker, Esquire, the attorney representing Adoption Legal Services Project, stated on the record that on October 20, 2022, four days prior to the scheduled hearing date, she emailed Mother a copy of the court's order granting the continuance to October 24, 2022; she also stated that she mailed a hard copy of that order to Mother's home address, First Class U.S. Mail. *Id.* at 7-8. *See id.* at 8 ("I just wanted to make sure on the record [M]other was in fact aware of today's proceedings."). Attorney Hunsicker also stated that although Mother did not respond to the October 20 email, she did respond to a subsequent October 21, 2022 email, in which Attorney Hunsicker had sent the transcript from Day 1 of the hearing. Attorney Hunsicker thus noted that the email address she had for Mother was accurate. *Id.* at 8.

On October 26, 2022, the trial court granted CYF's petition to terminate Mother's parental rights to Children pursuant to subsections 2511(a)(2), (5), (8) and (b). The next day, Mother filed a motion to stay the termination proceedings, and, on November 1, 2022, the court held argument on that motion. Mother claimed she did not attend Day 2 of the hearing because she believed her filing the notice of appeal from the continuance order stayed the proceedings. At the conclusion of the hearing, the court denied Mother's request for stay. On November 1, 2022, the court entered an amended order terminating Mother's parental rights. *See* Amended Order, 11/1/22.

On November 4, 2022, Mother filed this *pro se* appeal and two separate Pa.R.A.P. 1925(b) statements. On February 17, 2023, Mother filed a motion

in this Court requesting counsel be appointed for her, which this Court granted, ordering appointed counsel to file an amended Rule 1925(b) statement. *See* Order, 2/27/23. Appointed counsel complied, and the trial court filed a Rule 1925(a) opinion.

Mother raises the following issues on appeal:

1. Did the trial court err in failing to properly advise Mother of her right to counsel and any risks associated with the potential waiver of such right?

2. Did the trial court err in failing to rule on certain objections made by counsel?

3. Did the trial court commit an error of law and abuse its discretion by admitting [the] report of Patricia Pepe, Ph.D., Licensed Psychologist], without testimony or confirmation by Dr. Pepe, when it then relied on it heavily when issuing the order and opinion?

4. Did the trial court commit an error of law when it failed to grant Mother's request for a stay and request to present additional evidence on November 1, 2022?

5. Did the trial court commit an error of law and abuse its discretion by proceeding with the hearing on the involuntary termination of Mother's parental rights on October 24, 2022, when Mother had filed a [n]otice of [a]ppeal to the Superior Court on October 20, 2022?

6. Did the trial court commit an error of law and abuse its discretion when it involuntarily terminated Mother's parental rights under 23 Pa.C.S.A. §§ 2511(a)(2), (5), and (8)?

Appellant's Brief, at 8-9.

Mother first argues the trial court erred in failing to properly advise her of her right to counsel and the risks of waiving such right. Section 2313(a.1) of the Adoption Act provides that a court "shall appoint counsel for a parent

whose rights are subject to termination in an involuntary termination proceeding if, upon petition of the parent, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship." **Id.**

On Day 1 of the hearing, nine witnesses testified and Attorney Herzing cross-examined all but one of those witnesses, **see** N.T. Termination Hearing (Day 1), **supra** at 36-39, 69-72, 87-90, 104, 107-08, 160-69, made appropriate objections, **id.** at 95-96, 112, 114-15, 119, 130, 137, 145, and presented three witnesses on behalf of Mother for direct examination. **See id.** at 175-79, 183-88, 193-96. Thereafter, not satisfied with Attorney Herzing's representation, Mother filed an emergency motion for special relief, seeking a continuance for Day 2 of the hearing to allow her time to prepare, and alleging she was "grossly misrepresented" by Attorney Herzing. Motion for Special Relief, 9/26/22. At the hearing on Mother's motion, the following exchange occurred:

> Mother: I'm here because Brianna Herzing misrepresented me on purpose.
>
> The Court: Well, I don't believe that. I was here for the hearing, the whole day for that hearing.
>
> Mother: So was I.
>
> The Court: And I don't think that she did anything inappropriate, but what is your plan moving forward, then?
>
> * * *
>
> Mother: I would like a continuance so that I could either—it is not the actual parent advocacy center that I—it's Brianna Herzing specifically, and they told me that they can't provide

me another attorney, and so either I would be representing myself or I can still have her represent me, and I said, "No. No way." So I'm going to, moving forward, I'm going to represent myself because I can't afford another attorney.

* * *

The Court: Okay. Well, here's what I'm willing to do [.] I don't, again, I don't agree with you firing Ms. Herzing. I think that's a bad, bad choice on your part. I do. But if you want to do that, that's fine. . . . You can continue, and that's the last postponement you're going to get. You're going to either need to have a lawyer up and ready to go, you're going to have to be ready to go yourself if you're going to represent yourself, or you can keep Ms. Herzing. And even if you represent yourself, [] unfortunately, Ms. Herzing, I'm going to request that you stay here in case [Mother] has any questions if she's doing that, that she could ask you. So I'm not letting [Attorney Herzing] off the case at this point because I think you may need her.

N.T. Hearing on Emergency Petition for Special Relief, 9/27/22, at 4-12.

Mother's claim that she was not advised of her right to counsel is disingenuous. Not only was she advised of such, she has had appointed counsel to represent her throughout several years of dependency and termination proceedings. Her decision to proceed *pro se* was made despite the court's warnings. Further, in light of the critical rights at stake, the court ordered that Attorney Herzing remain as Mother's standby counsel. Mother's complaint is grounded in the simple fact that the evidence presented on Day 1 was not favorable to her. Her arguments that she did not comprehend the seriousness of her decision, or that her due process rights were violated, are not persuasive. We find no error.

Next, Mother claims the trial court erred in failing to rule on certain objections on Day 1 of the hearing. Although Mother cites to pages, 17, 22, 25, 34 and 35 of the notes of testimony, she makes no specific argument with respect to individual objections, other than a general reference to evidence "admitted regarding Mother's alleged failure to address [C]hildren's medical and therapeutic needs[.]" Appellant's Brief, at 24. Mother claims the court made no ruling and the evidence was prejudicial to her. No relief is due.

"[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Umbelina v. Adams*, 34 A.3d 151, 161 (Pa. Super. 2011), quoting *In re W.H.*, 25 A.3d 330, 339 (Pa. Super. 2011); *see also* Pa.R.A.P. 2119(a). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 584 (Pa. Super. 2014) (citation omitted); *J.J. DeLuca Co., Inc. v. Toll Naval Assoc.*, 56 A.3d 402, 411 (Pa. Super. 2012). Mother's failure to develop these issues on appeal constitutes waiver of these claims. *See Irwin Union National Bank and Trust Company v. Famous*, 4 A.3d 1099, 1103 (Pa. Super. 2010) (explaining Superior Court will not act as counsel and will not develop arguments on behalf of appellant; when deficiencies in brief hinder our ability to conduct meaningful appellate review, we may deem certain issues waived); *Lackner v. Glosser*,

892 A.2d 21 (Pa. Super 2006) (explaining arguments not appropriately developed with citation to relevant authority are waived on appeal).[6]

In her third issue, Mother claims the trial court erred in admitting Dr. Pepe's report on Day 2 of the termination hearing. She argues "[n]o qualification or stipulation was provided by the only two remaining attorneys, neither of wh[om] were counsel for the parents,[7] who then stipulated to the

_____

[6] Even if Mother's claims had not been waived, we find no error. We have reviewed each of the objections on the transcript pages Mother identified: the objection at page 17 was a preemptive hearsay objection, and the witness continued without the hearsay testimony; the objection at page 22 was based on speculation, and counsel rephrased the question; the objection at page 25 was possible hearsay, but the question pertained to Father, not Mother; with respect to the hearsay objection at page 34, where Attorney Herzing objected to former foster parent Ellis' statement "they were a little behind on their shots," there in fact was no ruling, but the questioning pertained to Mother's interactions with Father at the pediatrician's office, not the issue of shots, and the questioning continued and the objection was not renewed; and, finally, the hearsay objection at page 35 was lodged mid-sentence of the witness's response, and the witnessed responded, "Okay, sorry," and moved on. We find no error or abuse of discretion. *See In re A.J.R.-H.*, 188 A.3d 1157, 1167 (Pa. 2018). *See also Schuenemann v. Dreemz, LLC*, 34 A.3d 94, 99 (Pa. Super. 2011) ("[Evidentiary] rulings must be shown to have been not only erroneous but also harmful to the complaining part[y].").

[7] Contrary to this statement, Jay Kranich, Esquire, represented Father and did appear at Day 2 of the hearing. At that hearing, Attorney Kranich advised the court that Father wished to withdraw his opposition to the termination proceeding, stating:

If it please the [c]ourt, after much discussion with [Father], he'd ask the [c]ourt at this time to consider allowing him to withdraw his contest. [Father] and I have gone over the testimony of the witnesses so far, the history of the case, current circumstances, and in particular Dr. Pepe's report. [Father] is here today, Your Honor, after having made a knowing and voluntary decision, after

*(Footnote Continued Next Page)*

admission of the report without Dr. Pepe even present." Appellant's Brief, at 26, citing N.T. Termination Hearing (Day 2), 10/24/22, at 10-12. This claim is waived.

As a preliminary matter, in order to preserve a claim of error for appellate review, a party must make a specific objection to the alleged error before the trial court in a timely fashion and at the appropriate stage of the proceedings; failure to raise an objection results in waiver of the underlying issue on appeal. *In re J.A.*, 107 A.3d 799, 820 (Pa. Super. 2015). "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Here, Dr. Pepe was scheduled to appear on October 24, 2022 for Day 2 of the termination hearing, and she was available to testify on that date. Kristen Hunsicker, Esquire, who represented Adoption Legal Services Project,

_____

> discussing with me that he can continue in this case and call witnesses. He can put his own case on and his own evidence in. But what he wants to do today is provide [Children] with the permanence that comes with the adoption. He understands that their needs are being met currently with the foster parents. It's the hardest decision he's had to make, but he feels that he loves his children so much that this is the right decision to make.

N.T. Termination Hearing (Day 2), *supra* at 4. The court allowed Father to withdraw his opposition and excused Father and Attorney Kranich. *Id.* at 7. Furthermore, with respect to her statement that the witness was not qualified, Mother stipulated on September 21, 2022, that Dr. Pepe was a licensed psychologist and an expert in psychology and child psychology. *See* N.T. Termination Hearing (Day 1), *supra* at 7; Joint Exhibit 2, ¶ 23 ("Dr. Patricia Pepe is a licensed psychologist and expert in psychology and child psychology.").

was prepared to call Dr. Pepe as her last witness. *Id.* at 9. As she was about to contact Dr. Pepe, Attorney Zlokas, counsel for Children, stated he was willing to stipulate to the report, Attorney Hunsicker agreed to that, and the report was entered into evidence without objection. *Id.* at 9-11. That proceeding had been continued to that date on Mother's motion. Mother chose not to appear at the schedule Day 2 hearing, her standby counsel was excused, *id.* at 4, and, consequently, she has waived any objection to the admission of that report. *See* Pa.R.A.P. 302(a). *See In re J.A.*, *supra*; *see also Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa. Super. 1995) ("On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.").

Mother's fourth and fifth issues challenge the court's order denying her request for a stay of the proceedings after she filed a notice of appeal from the court's order granting her continuance to October 24, 2022. This claim is meritless. Mother was present in court for the hearing on her motion, on September 27, 2022, when the trial court granted her continuance to October 24, 2022. *See* N.T. Hearing, 9/27/22 at 16. As noted above, Mother's October 20, 2022 appeal from that order was interlocutory, and this Court quashed it. Mother's "belief" that her notice of appeal stayed the proceedings does not justify her failure to ascertain whether she needed to appear or her failure to consult standby counsel or the court if she had any question regarding a stay. *See Vann v. Commonwealth, Unemployment*

***Compensation Board of Review***, 494 A.2d 1081, 1086 (Pa. 1985) ("[A]ny layperson choosing to represent [herself] in a legal proceeding must, to some reasonable extent, assume the risk that [her] lack of expertise and legal training will prove [her] undoing."). No relief is due.

In her final claim, Mother argues the trial court erred or abused its discretion when it involuntarily terminated Mother's parental rights under subsections 2511(a)(2), (5), and (8). Mother contends that the court relied heavily "on evidence that should have been excluded in reaching its conclusion that Mother's parental rights should be terminated." Appellant's Brief, at 38. In particular, Mother points to Dr Pepe's report, claiming that without that report, there was "no evidence to support the trial court's findings regarding Mother's mental health, no evidence to support the findings regarding whether the bond could be overcome by adoption, and no evidence regarding whether Mother could provide proper parental control and guidance." ***Id.*** at 40. Mother's argument is belied by the record.

In reviewing an appeal from an order terminating parental rights,

[a]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***In re R.I.S.***, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel–Bassett***

> *v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011);
> *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003).
>
> Instead, a decision may be reversed for an abuse of discretion
> only upon demonstration of manifest unreasonableness, partiality,
> prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an
> abuse of discretion standard of review in these cases. We
> observed that, unlike trial courts, appellate courts are not
> equipped to make the fact-specific determinations on a cold
> record, where the trial judges are observing the parties during the
> relevant hearing and often presiding over numerous other
> hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190.
> Therefore, even where the facts could support an opposite result,
> as is often the case in dependency and termination cases, an
> appellate court must resist the urge to second guess the trial court
> and impose its own credibility determinations and judgment;
> instead we must defer to the trial judges so long as the factual
> findings are supported by the record and the court's legal
> conclusions are not the result of an error of law or an abuse of
> discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066
> (Pa. 1994).

*In re I.E.P.*, 87 A.3d 340, 343–44 (Pa. Super. 2014) (quoting *In re Adoption*

*of S.P.*, 47 A.3d 817, 826–27 (Pa. 2012)).

> In a proceeding to terminate parental rights involuntarily, the
> burden of proof is on the party seeking termination to establish
> by clear and convincing evidence the existence of grounds for
> doing so. The standard of clear and convincing evidence is defined
> as testimony that is so "clear, direct, weighty and convincing as
> to enable the trier of fact to come to a clear conviction, without
> hesitance, of the truth of the precise facts in issue." It is well
> established that a court must examine the individual
> circumstances of each and every case and consider all
> explanations offered by the parent to determine if the evidence in
> light of the totality of the circumstances clearly warrants
> termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation

omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party

seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under section 2511(a) exists and that termination promotes emotional needs and welfare of child as set forth in section 2511(b)).

Instantly, the court terminated Mother's parental rights under subsections (2), (5) and (8). Those sections provide as follows:

§ 2511. Grounds for involuntary termination

(a) General rule. — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect[,] or refusal of the parent has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent.

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the

> removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(2), (5), (8).

While the trial court found that CYF met its burden of proof under each section quoted above, we need only agree with its decision as to any one subsection in order to affirm the termination of parental rights. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). For the following reasons, we conclude that the trial court correctly concluded that CYF met its burden of proof under 23 Pa.C.S.A. § 2511(a)(8).

To terminate parental rights under subsection 2511(a)(8), CYF had establish by clear and convincing evidence that: (1) Children had been removed from parental care for 12 months or more; (2) the conditions that led to removal continue to exist; and (3) termination of parental rights would best serve Children's needs and welfare.

At the time CYF filed its petition, on December 28, 2021, Children had been in foster care for sixteen months. Children were removed from Mother's care and declared dependent as a result of Mother's failure to recognize safety concerns in allowing Father to reside in the home, Mother's significant mental health issues, and Mother's lack of protective capacity. At each permanency review hearing, the court determined Mother's progress was "minimal." Mother has repeatedly permitted Father to reside in the home despite the fact he has been convicted of rape and abuse of a child in Massachusetts, and she has repeatedly rekindled her relationship with Father. Notwithstanding

Mother's completion of non-offenders' treatment on two separate occasions, the trial court remarked that it "does not believe that Mother has developed any insight about the dysfunctional dynamic between her and Father and that this has remained largely the same since the case opened in 2020." Trial Court Opinion, 4/10/23, at 14. Moreover, the evidence established that Mother was not meaningfully engaged in mental health treatment, IPV counseling, and non-offenders' treatment, as she has been "unable to recognize and appreciate the safety risks posed by Father." *Id.* at 15.

Former foster parent Lisa Elis testified at length regarding the positive changes in Children in the fifteen months they were in her care. Children, who were ages 3 and 5 at the time they were placed in her care, were non-verbal, were not potty-trained, did not know their names, had no awareness of one another, had no awareness of safety, and engaged in self-harm. Ellis testified to the significant progress Children had made:

> We followed a very strict routine, so they thrived on a routine. They were very social, they were very friendly, they were very outgoing. [S.B.] specifically thrived in school. Numbers, shapes, colors, all the preschool things, he was able to learn in that period of time. He could write his name. He could write some other words that we would practice during school. He could perform math, simple math problems on his own. He was a hundred percent potty-trained. He learned respect and following the rules and the importance of following [the] rules. He definitely became better with his self-control and his anger outbursts. . . . I [no longer had] concerns about [] his lack of safety awareness. . . . He was actually able to communicate and have conversations back and forth with somebody, and he actually was able to have a loving relationship with his sister and the other people in my home. So he learned to communicate and interact with other people, which [he] hadn't had that before.

[With respect to A.B., she] was able to do a lot of the same [remote school] sessions with [S.B.] because I would just teach them both at the same time. So she mastered the preschool skills. She knew all her letters, she knew her numbers. She had hundreds of words in her vocabulary. She would speak full sentences. She could actually role-play and pretend play with baby dolls and things like that. We had zero self-harm, no anger issues, and she also was able to have relationships with other people.

[Children] started reading books and playing with educational toys, where when they first came into the home, they didn't know what to do with a book, to sit and actually look and know what a book actually did.

N.T. Termination Hearing, 9/23/22, at 28-29, 35.

We note Mother does not challenge the trial court's bonding analysis under subsection 2511(b). Nonetheless, the trial court recognized that Mother loves Children and that she has made visitation a priority. *See* Trial Court Opinion, *supra* at 19. However, "[a] parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125 (citation omitted). Rather, "a parent's basic constitutional right to the custody and rearing of [] her child is converted, upon the failure to fulfill [] her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

Additionally, the evidence established that Children do not view Mother as their "psychological parent." Doctor Pepe's Report, CYF Exhibit H, at 21. Doctor Pepe conducted several evaluations with the family, which occurred on July 18, 25, 26, and September 12 of 2022. *Id.* at 1. Doctor Pepe noted she had a great deal of empathy for Mother, who had experienced sexual abuse as a child, but that Mother's personality disorders (Posttraumatic Stress Disorder, Avoidant Personality Disorder, and Schizoid Personality) cause "irrational decision making, and poor impulse control" and "put [C]hildren in unsafe situations." *Id.* at 15, 19. Doctor Pepe noted that Mother allowed Father, a convicted sex offender, to shower with Children, and her effort to contain the behavior was to require Father wear boxer shorts in the shower. *Id.* at 19. Doctor Pepe opined that Mother has failed to protect Children and has not proven the capacity to protect them "currently or in the not-too-distant future." *Id.* at 19-20. Doctor Pepe determined that Mother is not "psychologically in a position to provide [C]hildren with a safe and stable environment." *Id.* at 21.

Doctor Pepe's report also indicated that any level of attachment Children might exhibit with Mother was "not psychologically necessary for their future development," *id.*, that Children's need for safety stability outweighed any attachment they may have to Mother, that Foster Parents were meeting Children's emotional, physical, educational, medical, and spiritual needs, and that Children were bonded with Foster Parents. *Id.* at 20. Doctor Pepe recommended that Children remain in their current foster home on a

permanent basis through adoption. *Id.* at 21. *See In re K.Z.S.*, 946 A.2d, 753, 763 (Pa. Super. 2008) (affirming involuntary termination of parental rights, despite existence of some bond with mother, where placement with mother would be contrary to child's best interests). We conclude CYF has met its burden of establishing that termination would best serve Children's needs and welfare. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003).

Moreover, it is appropriate to consider Children's bond with Foster Parents. *See In re: T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). Here, foster care worker Calve, CYF adoption home study worker Washington, and caseworker Moran each testified as to Children's bond with Foster Parents. *See* N.T. Termination Hearing (Day 1), *supra* at 85 (foster care worker Calve stating Children have "a very loving and strong bond" with Foster Parents and go to them for "reassurance, comfort, and love"); *id.* at 102 (CYF adoption home study worker stating Children interact well with Foster Parents, "[t]hey're very affectionate, lots of hugs, cuddling" and "they live on a farm, so they want to do some of the farm chores and see the animals," and "it's been really, really great interactions"); *id.* at 152-53 (caseworker Moran testifying to affection between Children and Foster Parents and ability of Foster Parents to redirect Children if necessary). *See also id.* at 32 (former foster parent Ellis testifying that even though Children are with Foster Parents, she still sees them, and they are "happy [and] respectful to [Foster Parents] and that Foster Parents were "very loving with them"). Further, Dr. Pepe's report concluded that

"[o]bserving [C]hildren during each of the Interactional Evaluations revealed multiple behaviors suggestive of primary attachment with their foster parents." Doctor Pepe's Report, *supra* at 21.

The competent evidence in the record amply supports the trial court's determination that termination of Mother's parental rights to Children is in their best interests, that Mother's rights must yield to Children's need for a safe and permanent environment, and that Children would not suffer any harm from the termination of Mother's parental rights. *See In re: T.S.M.*, 71 A.3d at 267. Thus, we will not disturb the trial court's decision. *See In re Adoption of S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the trial court's orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2023